John A. GRUNDY, Barbara Grundy, Thomas Grundy, Gail A. Grundy, Barbara Grundy Bouchard, Donna J. Grundy, John Grundy, and John and Barbara Grundy as Natural Guardians and Friends of David Grundy and Daniel K. Grundy

v.

The UNITED STATES.

No. 318–79C.

United States Claims Court.

June 16, 1983.

James Murray, Pawtucket, R.I., for plaintiffs.

Frances L. Nunn, Washington, D.C., with whom was Asst. Atty. Gen. J. Paul McGrath, Washington, D.C., for defendant.

## OPINION ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

PHILIP R. MILLER, Judge:

This is an action for $1,000,000 brought by John A. Grundy and members of his family, for damages alleged to have been sustained by them as the result of the breach of an implied contract alleged to have been entered into between members of the United States Marshals Service and himself in connection with their operation of a "safehouse" for the protection of witnesses waiting to testify against defendants in federal criminal cases. Although the members of Grundy's family are also complainants, when used in the singular the term plaintiff will refer to John Grundy.

The complaint alleges the following: Plaintiff was the owner of a construction business known as I.J. Inc., located on a piece of real property designated as the Stillwater Estate in Smithfield, Rhode Island. In 1971 plaintiff agreed with John J. Partington, a deputy U.S. Marshal, to allow the U.S. Department of Justice to use the Stillwater Estate to house and conceal prospective witnesses against organized crime figures. On February 5, 1972, Henry and Evelyn Payette, record owners of the Stillwater Estate, but who, plaintiff claims, were his partners, leased the premises to the United States Marshals Service represented by Donald W. Wyatt, U.S. Marshal for the District of Rhode Island, for the same purpose on an annual rental basis.

The complaint further alleges that incident to the lease Marshals Wyatt and Partington orally agreed with plaintiff: (1) that they would not place in "the safehouse" any witnesses who were residents of Rhode Island; and (2) that plaintiffs would come to no harm by reason of their cooperation with the government, that the government, the two named marshals and the Attorney General would protect the plaintiffs should they be exposed to any danger, and that the government would indemnify them from any losses they might sustain because of their cooperation. Plaintiff alleges a breach of contract in that the government placed a Rhode Island resident with organized crime connections in "the safehouse" and thereby put plaintiff, his family and employees in great danger of bodily harm from associates of such witness; that "the safehouse" operation was publicized in local television and the press, and, as a consequence, various members of organized crime threatened him and his family, drove him to bankruptcy, and caused him to lose

his business and to be evicted from his home.

Defendant moves for summary judgment on the ground that the complaint fails to state a claim within the jurisdiction of the court and upon which relief may be granted.

■ Quite clearly, this court has no jurisdiction over the claims against the individuals John J. Partington, Donald W. Wyatt and Griffin Bell. 28 U.S.C. § 1491 (1976). Therefore, the claims against them must be dismissed.

Title 28 U.S.C. § 1491 gives jurisdiction to this court to render judgment upon any claim against the United States "founded either upon the Constitution, or any Act of Congress, or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort."

■ In their brief in opposition to the motion for summary judgment, plaintiffs assert that their claim is—

cognizable as a claim founded upon the constitution inasmuch as the defendant violated plaintiffs' right to due process by its failure to advise them of the dangers in cooperating with the U.S. Justice Department and of the probable consequences of exposure of their role as a front for the Witness Protection Program and by the later failure to warn them of the dangers of their continued role with the Program following its exposure.

However, the jurisdiction of this court over a claim founded upon the Constitution does not encompass a claim merely because it asserts violation of the "due process" clause. To give this court jurisdiction of a claim founded upon the Constitution, it must involve either a claim for repayment of money exacted by the government in violation of a constitutional provision or else a claim for payment of money mandated by the Constitution, such as the "just compensation" clause of the fifth amendment. *Eastport Steamship Corp. v. United States,* 178 Ct.Cl. 599, 605–07, 372 F.2d 1002, 1007

(1967); and see *United States v. Testan,* 424 U.S. 392, 401–02, 96 S.Ct. 948, 954–55, 47 L.Ed.2d 114 (1976).

■ In their brief plaintiffs allege jurisdiction based upon a breach of an "expressed oral contract arising from promises made by defendant's agents to provide plaintiffs with protection and to hold them harmless." But the government contract basis for jurisdiction of this court is also limited to situations where the government contracts in a non-sovereign capacity, or, at the least, contracts for the payment of money. This rule was applied recently in *Kania v. United States,* 227 Ct.Cl. 458, 464, 650 F.2d 264, 268, *cert. denied* 454 U.S. 895, 102 S.Ct. 393, 70 L.Ed.2d 210 (1981). The court held that it had no jurisdiction of a claim for breach of an agreement that the United States would not prosecute the plaintiff in return for his good faith testimony before a grand jury investigating his employer. The court explained (227 Ct.Cl. at 464, 650 F.2d at 268):

The contract liability which is enforceable under the Tucker Act consent to suit does not extend to every agreement, understanding, or compact which can semantically be stated in terms of offer and acceptance or meeting of minds. The Congress undoubtedly had in mind as the principal class of contract case in which it consented to be sued, the instances where the sovereign steps off the throne and engages in purchase and sale of goods, lands, and services, transactions such as private parties, individuals or corporations also engage in among themselves.

The alleged contract here was not of a kind which the government would make in a non-sovereign capacity, nor did it provide for payment of money to plaintiffs.

Plaintiffs claim that the marshals' authority to enter into the alleged agreements may be found in the "Witness Protection Program of the Department of Justice under the Organized Crime Control Act of 1970, Pub.L. No. 91–452 [Title V, §§ 501–04, 84 Stat. 933 (1970)], and pursuant to 28 U.S.C. 501–505, 28 U.S.C. 509, 510 and 524," and that "Pursuant to 28 U.S.C. 510, the

Attorney General delegated his authority to supervise and control the Program to the U.S. Marshal Service by way of a regulation published at 28 CFR 0.111 (1972)."

■ The Organized Crime Control Act does not provide authority from Congress for the contract which plaintiffs allege. Section 501 of that Act authorizes the Attorney General to provide for the security of government witnesses and their families; section 502 authorized the Attorney General to rent housing and to otherwise offer to provide for the health, safety and welfare of witnesses and their families; and section 504 authorizes the appropriation of funds to carry out the foregoing provisions. However, nothing in the Act authorizes the Attorney General to incur obligations to provide analogous benefits for persons, such as the plaintiffs, who are not witnesses and not intended to be witnesses against persons in organized crime. Furthermore, even with respect to witnesses, it is settled law that under the Organized Crime Control Act of 1970, "the admission of persons to the Witness Protection Program is reserved to the discretion of the Attorney General, as is the compensation paid to such persons" and a participant in that program has no right to receive any payment of money even where it is asserted that federal officials have breached promises made to the participants. *Doe v. United States,* 224 Ct.Cl. 632, 633–34 (1980). *Accord: Ronald Johnson and Joan Johnson v. United States,* Ct.Cl. No. 68–82C (Order of July 16, 1982); *John Doe and Jane Doe v. United States,* Ct.Cl. No. 732–81C (Order of June 8, 1982); *Roger Young and Patience Young v. United States,* Ct.Cl. No. 720–81C (Order of April 13, 1982).

Finally, even if the Attorney General had the authority in 1972 to enter into a contract such as plaintiffs allege, there is no basis for the contention that the two U.S. Marshals had the same authority.

In *Federal Crop Ins. Corp. v. Merrill,* 332 U.S. 380, 68 S.Ct. 1, 92 L.Ed. 10 (1947), the Supreme Court stated the oft quoted rules that (332 U.S. p. 384, 68 S.Ct. p. 3)—

[A]nyone entering into an arrangement with the Government takes the risk of having accurately ascertained that he who purports to act for the Government stays within the bounds of his authority. The scope of this authority may be explicitly defined by Congress or be limited by delegated legislation, properly exercised through the rule-making power. And this is so even though, as here, the agent himself may have been unaware of the limitations upon his authority.

and that it is (332 U.S. p. 385, 68 S.Ct. p. 3)—

the duty of all courts to observe the conditions defined by Congress for charging the public treasury.

*Accord: Schweiker v. Hansen,* 450 U.S. 785, 788, 101 S.Ct. 1468, 1470, 67 L.Ed.2d 685 (1981).

■ The Court of Claims has also reiterated on many occasions that a claimant for money damages for breach of an express or implied in fact contract must plead and prove that the officer who supposedly made the contract had authority to obligate appropriated funds for such purpose. *Kania v. United States, supra,* 227 Ct.Cl. at 465, 650 F.2d at 268; *Grismac Corp. v. United States,* 214 Ct.Cl. 39, 45, 556 F.2d 494, 497 (1977); *Housing Corp. of America v. United States,* 199 Ct.Cl. 705, 711, 468 F.2d 922, 925 (1972). Apparent authority is not enough; plaintiff has the responsibility of establishing that the agent had actual authority. *Jackson v. United States,* 216 Ct.Cl. 25, 41 n. 2, 573 F.2d 1189, 1197 n. 2 (1978).

Plaintiffs claim that the marshals' authority to enter into alleged agreements with him may be found in a delegation from the Attorney General to the Director of the United States Marshals Service, 28 C.F.R. § 0.111 (1982), promulgated pursuant to the authority of 28 U.S.C. § 510. However, even if such regulations were in point, they were not in effect during 1972. They were initially issued May 17, 1973 (38 FR 12917) and the language upon which plaintiffs rely was not adopted until they were amended on August 6, 1980 (45 FR 52145).

**600**

*Conclusion*

Defendant's motion for summary judgment is granted. Judgment will be entered dismissing the complaint.