Joseph H. DALALY

v.

The UNITED STATES.

No. 585–80L.

United States Claims Court.

Aug. 15, 1983.

George E. Ward, Detroit, Mich., for plaintiff; Kaufman, Roche & Ward, P.C., Detroit, Mich., of counsel.

Gerald S. Fish, with whom was Asst. Atty. Gen., Carol E. Dinkins, Washington, D.C., for defendant.

## OPINION

MEROW, Judge:

This case is before the court on motions for summary judgment filed by both parties. At issue is plaintiff's monetary claim based upon the failure of the General Services Administration (GSA) to recognize the validity of a purported lease by the government of certain property owned by plaintiff. No material issues of fact exist on the issue of liability.

*Background*

Plaintiff owned a building located at 11201 East Jefferson Avenue, Detroit, Michigan. In 1968, GSA leased this building for five years. In 1972, the Social Security Administration (SSA) in Detroit required additional office space and plaintiff was contacted for the purpose of securing this space.

The government officer who conducted most of the negotiations for this space with plaintiff was Mr. Marion Colvin, an SSA employee who was detailed to GSA as a "realty specialist." Mr. Colvin had been given a "crash" course in real estate so that he could aid GSA in procuring the necessary space.

During his training, Mr. Colvin was instructed that he had no authority to enter into a lease for the government without the approval of his superiors. The material submitted in support of the pending motions includes the affidavit and deposition of Mr. Victor J. Martello, a GSA "Supervisory Realty Specialist," located in Chicago, Illinois, who was in charge in the Detroit program. Mr. Martello testified that at the relevant time only GSA employees having at least a GS–11 rating [1] were authorized to enter into five year leases. The normal process was to have a proposed lease forwarded to the Chicago GSA office and, if approved, mailed to the lessor.[2]

In the instant case, plaintiff had several meetings with Mr. Colvin to discuss the proposed lease of additional space. At the first meeting, the local SSA district manager for "Detroit East" attended. Mr. Colvin testified, in his deposition submitted in this matter, that the manager wanted to lease additional space in plaintiff's premises in the blighted location involved because "its probably the best available in the whole area." By a letter dated September 5, 1973, addressed to Mr. Colvin, plaintiff submitted a proposal to lease for five years additional space to the government (4,585 square feet).

---

1. Plaintiff alleges that Mr. Colvin had a GS–13 rating but has provided no proof of this assertion.

2. This statement is supported by GSA memoranda which indicate that GSA was overseeing the program and providing "on-the-job training" to the SSA employees "detailed" to GSA.

Mr. Dalaly stated that "I am constructing the space larger than required because it makes best use of the property."

On September 20, 1973, GSA issued a "Solicitation For Offers" for a five year lease of 3,569 net usable square feet in Detroit, Michigan. The solicitation noted that the space was required "on 1/1/74 or sooner * * *."

On October 9, 1973, plaintiff submitted a "Proposal to Lease Space to the United States of America" (GSA Form 1364). His proposal was to lease 4,559 square feet of office space at 11201 E. Jefferson Avenue, Detroit, Michigan, for five years at an annual rental of $25,519.

At some point during this period, Mr. Colvin and Mr. Dalaly met and plaintiff was then given a document purporting to be a copy of a partially executed Standard Form 2, U.S. Government Lease for Real Property. The document bore a lease number, "GS–05BR–11840," but no date in the adjoining space provided therefor. The form recites the leasing of "4585 square feet of net usable space being the entire one story building located at 11201 East Jefferson, Detroit, Michigan 48214." The lease term is stated as "beginning on February 1, 1974 through January 31, 1979, * * *." The annual rent is listed as "$25,519.00." The document bears a typed signature of "Joseph H. Dalaly" and a handwritten signature of "Victor J. Martello," together with the title "Acting Chief Acquisition Branch."

Mr. Colvin, in his statements and deposition, has indicated that this document was intended to be a "sample" lease. Mr. Colvin was aware that plaintiff intended to use the document to aid in obtaining a loan to begin construction of the contemplated additional lease area proposed.[3]

In the absence of any approval of his construction plans, on July 24, 1974 plaintiff

met in Chicago, Illinois with Mr. Peter Hebert, supervisory realty specialist, acquisition branch, space management division, GSA. At this time he produced the copy of the lease provided to him by Mr. Colvin. At that time, Mr. Martello examined the lease form and denied executing such a document.

By a letter dated July 26, 1974 addressed to Mr. Hebert, plaintiff asserted that "In September 1973 I negotiated with the Social Security representatives in Detroit a rental contract for additional space at 11201 E. Jefferson Avenue, * * *." Because of ensuing delays, plaintiff indicated that it would be necessary "to change the annual rental to $30,000 annually, to recover increased costs."

In subsequent communications to GSA and in response to discovery in this action, Mr. Colvin admits signing Mr. Martello's name to the lease form he gave plaintiff for sample purposes.

On December 24, 1974, GSA issued a new solicitation for offers, No. GS–05BR–12106, to satisfy the additional Detroit office space needs of SSA.

In May 1975 plaintiff met with GSA officials in Chicago, Illinois to assert his position, premised upon the form provided by Mr. Colvin, that he had a lease for the additional office space at 11201 E. Jefferson Avenue, Detroit, Michigan.

· By a letter dated June 24, 1975, GSA advised plaintiff that all offers received in response to solicitation No. GS–05BR–12106 would be rejected.

In August 1975 GSA initiated an investigation into the circumstances surrounding the form provided to plaintiff.

By a letter dated October 21, 1975 to GSA in Chicago, Illinois, plaintiff again stated his position that he had a valid lease and noted that over two years had elapsed since it was sent to him. Mr. Dalaly requested

---

**3.** The record indicates that plaintiff made a down payment to a contractor on October 8, 1973. No evidence of a loan to plaintiff has been submitted. A letter dated April 11, 1974 from Michigan National Bank of Detroit to Mr. and Mrs. Joseph Dalaly states that that bank

was prepared to extend a $90,000 five year installment loan provided that, among other items, the SSA executed "a five year non-cancellable lease requiring the landlord only to pay taxes and maintain the facilities calling for minimum monthly payments of $2,127.00; * * *."

an explanation for the delay in approving the building plans "so that we may resolve the problem and then commence the completion of the added facilities."

In response, GSA informed plaintiff that an investigation had been initiated and "when the investigation is completed, we will inform you of what action we propose to take."

Plaintiff continued to lease the existing facilities at East Jefferson Avenue to GSA until 1979. The instant action was filed on October 27, 1980. Following completion of pretrial requirements, a trial was scheduled in Detroit, Michigan but was cancelled at the request of the parties to proceed by motion for summary judgment.

## DISCUSSION

In order to recover in this action for breach of a purported lease agreement, plaintiff must first establish the existence of a valid lease contract with the United States. 28 U.S.C. § 1491; *Slobojan v. United States,* 136 Ct.Cl. 620 (1956); *Schoenbrod v. United States,* 187 Ct.Cl. 627, 410 F.2d 400 (1969); *Grundy v. United States,* 2 Cl.Ct. 596 (1983).

The administrator of GSA is authorized to enter into lease agreements "for the accommodation of Federal agencies in buildings * * *." 40 U.S.C. § 490(h)(1). The record in this matter demonstrates that, for the additional space required by SSA in Detroit, Michigan in 1973, the administrator's authority to enter into a lease had been delegated as far down in the organization as the supervisory realty specialists within the Chicago regional office of the GSA, such as Mr. Victor J. Martello. This leasing authority was not further delegated to subordinates of Mr. Martello, such as Mr. Colvin, who was an SSA employee serving on a temporary detail to GSA.

The form on which plaintiff relies to establish a valid lease bears a signature of Victor J. Martello which the record makes clear was written by Mr. Colvin (purportedly a "sample") without Mr. Martello's knowledge or consent. No evidence has been submitted to establish any practice permitting persons, such as Mr. Colvin, to so sign their supervisor's name. In contrast to other GSA leases obtained by plaintiff, the form in question does not bear plaintiff's signature, and the manner and timing of receiving it were unusual. The form is not complete as to the terms and conditions involved.

Plaintiff bears the burden of establishing that he has a contract made by a person having the authority to bind the United States. *Kania v. United States,* 227 Ct.Cl. 458, 465, 650 F.2d 264, 268, *cert. denied,* 454 U.S. 895, 102 S.Ct. 393, 70 L.Ed.2d 210 (1981); *Federal Crop Ins. Corp. v. Merrill,* 332 U.S. 380, 68 S.Ct. 1, 92 L.Ed. 10 (1947); *Schweiker v. Hansen,* 450 U.S. 785, 101 S.Ct. 1468, 67 L.Ed.2d 685 (1981).

In the circumstances presented of record, plaintiff has not met his burden of proof. Mr. Colvin did not have the authority to contract for the United States and the evidence submitted shows no other government official reached or ratified a lease agreement with plaintiff for the additional office space concerned.

Plaintiff asserts that the government should be estopped from denying the validity of the lease as set forth on the form provided by Mr. Colvin in that plaintiff took steps, to his detriment, in reliance upon it. While plaintiff's action in waiting, uncompensated, for a substantial period of time after the term of the purported lease commenced to show it to GSA officials in Chicago could raise a question as to the nature and extent of his reliance upon its binding nature, even assuming such reliance, this is not a case where estoppel can be applicable.

As Mr. Colvin did not possess authority to contract for the United States, any reliance by Mr. Dalaly on the copy of the "sample" form provided by Mr. Colvin, under the unusual circumstances of its tender, could not give rise to an estoppel to produce a binding five year lease agreement. *Emeco Industries, Inc. v. United States,* 202 Ct.Cl. 1006, 485 F.2d 652 (1973); *see Broad Ave.*

*Laundry and Tailoring v. United States,* 231 Ct.Cl. ——, 693 F.2d 1387 (1982).

## CONCLUSION

In the circumstances demonstrated by the record submitted in support of the parties' motions for summary judgment, it is concluded that plaintiff has failed to meet his burden of proof as to the existence of a contract with the United States such that his complaint seeking monetary damages for breach of contract must be dismissed. Judgment will be entered in favor of defendant dismissing the petition filed October 27, 1980.[4]

---

4. Given this conclusion, it is not necessary to consider the defense raised by defendant that plaintiff's claim first accrued more than six years prior to the filing of the petition in this action, such that it would be barred under 28 U.S.C. § 2501.