**PAT BARKLEY COURT REPORTERS, a professional corporation**

v.

**The UNITED STATES.**

**No. 370–83C.**

United States Claims Court.

Feb. 3, 1984.*

Daniel B. Wilen, Los Angeles, Cal., for plaintiff.

Lorraine B. Halloway, with whom was Richard K. Willard, Acting Asst. Atty. Gen., Washington, D.C., for defendant; Mark N. Stempler, Dept. of Navy, Washington, D.C., of counsel.

OPINION

WOOD, Judge:

This contract case, presently before the court on defendant's motion for summary judgment and plaintiff's opposition thereto, was originally filed in the United States District Court for the Central District of California. By order, entered May 31, 1983, the case was duly transferred to this court, pursuant to and in accordance with sections 1346(a)(2) and 1631, Title 28, United States Code (1982), and section 609(a)(1), Title 41, United States Code (1982).[1]

Plaintiff sues to recover $1,384.50, alleged to be due it for the rendition of court reporting services pursuant to an implied contract therefor with defendant.[2] In moving for summary judgment, defendant

---

* On defendant's motion, this originally unpublished opinion is being reissued as a published one.

1. Sections 1346(a)(2) and 609(a)(1) together confer upon this court exclusive jurisdiction over the contract claim herein. Section 1631 is the source of authority for a transfer to cure a District Court's want of jurisdiction.

2. The court lacks any jurisdiction to render judgment against the United States based on a contract implied in law. *Wertz v. United States,* 2 Cl.Ct. 45, 52 (1983); *Hargrove v. United States,* 1 Cl.Ct. 228, 230 (1982). As used herein, the term "implied contract" refers only to an agreement "implied in fact."

denies the existence of such a contract. Defendant also contends alternatively, however, that even were an implied contract proven, plaintiff still could not recover, because the government attorney whose conduct assertedly gave rise to an implied agreement with plaintiff had no authority to enter into a contract on behalf of the government.

For the reasons, and under the authorities, hereinafter appearing, defendant's motion for summary judgment is granted. Plaintiff's complaint will be dismissed pursuant to RUSCC 58.

I

On February 26, 1981, the Defense Supply Service, Department of the Army, and the United States Small Business Administration (SBA) entered into a contract (Contract No. MDA 903–81–D–0010, hereinafter Contract 0010) for the acquisition of stenographic reporting services for hearings before the Armed Services Board of Contract Appeals (ASBCA) between March 1 and September 30, 1981. While the prime contract was between defendant and SBA, Contract 0010 expressly provided that Alpha Reporting Services (Alpha) "shall for and in the stead of" SBA perform all reporting requirements under the contract as SBA's subcontractor.[3] As contemplated by Contract 0010, SBA and Alpha thereupon entered into a formal written subcontract covering the furnishing by Alpha of reporting services for ASBCA hearings during the said period. Both the prime contract and the subcontract were subsequently extended to September 30, 1982.

Some time prior to November 2, 1981, the ASBCA Recorder, designated as the Contracting Officer's Technical Representative and authorized to order reporting services under Contract 0010, placed with Alpha an order for transcription of a hearing scheduled to take place in Los Angeles, California, November 3, 4, and 5, 1981.[4] On November 2, 1981, Alpha's president spoke by telephone with plaintiff's office manager (who was also plaintiff's vice president). Plaintiff was advised that Alpha wanted to arrange for a reporter to cover the November 3–5, 1981, hearing. After being advised of plaintiff's rates, Alpha informed plaintiff of the time and place of the hearing, and plaintiff assigned one of its staff reporters to cover the hearing.[5] The hearing was held November 3, 4, and 5, 1981, in Los Angeles, as scheduled, with plaintiff providing reporting services.

The complaint herein alleges that at the conclusion of the hearing, the government trial attorney ordered "the transcription plus two copies to be prepared," and that this was subsequently done. In an affidavit appended to defendant's motion for summary judgment, that attorney flatly denies that he either requested plaintiff to record the transcript of the hearing or ordered "any transcript" from it. In response, the staff reporter who attended the hearing for plaintiff has declared that she was instructed by the government trial attorney "to transcribe the proceedings and provide the original and two copies for the Government." For purposes of ruling upon the government's motion for summary judgment, plaintiff's allegations may be and are credited.[6]

Some time after November 5, 1981 (but prior to December 1, 1981), plaintiff received from Alpha a request that the origi-

---

3. Contract 0010 also authorized Alpha to subcontract for reporting work to be performed outside the District of Columbia metropolitan area.

4. The hearing involved an appeal by Kepner Plastics Fabricators, Inc., under Navy Contract No. N625–78–76–C–0203.

5. Shortly before November 3, 1981, a person who identified herself as a reporter orally requested the government trial attorney to confirm the time, date and place of the hearing, and he did so. Whether the request came from Alpha or plaintiff is not clear, but its source is in any event not material here.

6. See South Louisiana Grain Services, Inc. v. United States, 1 Cl.Ct. 281, 289 (1982); Ball v. United States, 1 Cl.Ct. 180, 183 (1982). Cf. Prestex, Inc. v. United States, 3 Cl.Ct. 373, 377–79 (1983); Dalaly v. United States, 3 Cl.Ct. 203, 206 (1983).

nal and all copies of the transcript of the hearing be mailed directly to Alpha (along with plaintiff's "billings.") Plaintiff complied with that request. On December 1, 1981, the ASBCA received two copies of the transcript.[7] The ASBCA Recorder promptly forwarded one copy of the transcript to the government trial attorney. In January 1982, Alpha submitted to the ASBCA an invoice which included a charge of $1,751.00 for services rendered in connection with the November 3–5, 1981, hearing in Los Angeles. That invoice was promptly certified for payment by the ASBCA Recorder, and was thereafter paid in full.

After the certification, but prior to the payment, plaintiff sent to the government trial attorney three "Second Notice" invoices (each dated December 2, 1981, but postmarked February 22, 1982), covering the November 3–5, 1981, hearing, and totaling $2,638.50. On March 3, 1982, the government trial attorney (who had not received any prior invoices from plaintiff) forwarded them to the ASBCA Recorder. The Recorder returned them to the attorney March 8, 1982, with a notation that the transcripts had already been approved for payment to Alpha.

On April 6, 1982, plaintiff submitted to the Defense Supply Agency a claim for $2,415.65 for services rendered with respect to the November 3–5, 1981, hearing.[8] The claim was not paid, and plaintiff thereafter filed suit as described above.

## II

■ Plaintiff contends, in essence, that the actions of the government trial attorney at the conclusion of the November 3–5, 1981, hearing in Los Angeles gave rise to an implied contract between plaintiff and defendant with respect to the rendition of services by plaintiff, upon which plaintiff is entitled to recover; in plaintiff's words, "the basis for the claim is upon the actions of the attorney who attended the hearing."[9] As defendant asserts, the contention is, on this record, wholly without merit.

To prove the existence of an implied contract, the plaintiff must show "the same mutual intent to contract, as well as the absence of any ambiguity in the offer and acceptance, as is required for an express contract." *Prevado Village Partnership v. United States,* 3 Cl.Ct. 219, 223–24 (1983). "An implied-in-fact contract requires a meeting of the minds which is inferred from the conduct of the parties, and in the light of surrounding circumstances, shows their tacit understanding and agreement." *Fincke v. United States,* 230 Ct.Cl. 233, 243–44, 675 F.2d 289, 295 (1982). A definite offer by one party, and an unconditional acceptance thereof by the other, must be established. *City of Klawock v. United States,* 2 Cl.Ct. 580, 584 (1983).

While plaintiff's version of the conduct of the parties at the conclusion of the November 3–5, 1981, hearing is directly controverted, the facts averred by plaintiff (and for present purposes credited) fall far short of justifying any inference that "there was a tacit understanding and meeting of the minds" that defendant would pay plaintiff for stenographic services rendered at the said hearing. *Fincke,* 230 Ct.Cl. at 244, 675

---

7. Parenthetically, each of the three volumes of transcript contained a cover page bearing the name and address of "Alpha Reporting Services" and a contractually required "Certificate of Reporter" bearing the name and apparent signature of the staff reporter assigned by plaintiff to report the hearing.

8. That claim (which reflected a "Partial payment" of $1,254 by Alpha) was totalled incorrectly. Using plaintiff's dollar figures, the claim should have been only $848.15. In its complaint herein, plaintiff has increased its "per page" claim from $3.75 to $5.25 (and the total claimed for "418 pages" by $627); de-creased its "per diem" claim by $75, and decreased other sums claimed by $15.65; the result is a present claim for $1,384.50.

9. Plaintiff does not allege (nor is there in any event a basis for concluding) that action by any government employee at any other time created a right in plaintiff to recover. Plaintiff also does not (and could not successfully) assert a right to sue defendant as a subcontractor of Alpha. *See United States v. Johnson Controls, Inc.,* 713 F.2d 1541 (Fed.Cir.1983). And, plaintiff concedes the absence of any express contract between it and defendant.

F.2d at 295. Neither the matter of payment, nor the subject of plaintiff's rates, was even discussed with defendant. Without at least some focus on those elements, to infer as a fact any meeting of the minds as to a government payment to plaintiff for services rendered would be unjustified and improper. If the conversation relied on occurred as plaintiff says it did, it created no binding agreement between plaintiff and defendant. *Prevado,* 3 Cl.Ct. at 224–26; *City of Klawock,* 2 Cl.Ct. at 584.[10]

Accordingly, plaintiff has no valid claim against defendant, nor has it shown the existence of any genuine issue of material fact herein. Its complaint must, therefore, be dismissed.[11]

---

**10.** *Silverman v. United States,* 231 Ct.Cl. ——, 679 F.2d 865 (1982) is wholly inapposite.

**11.** In light of this result, whether or not the government trial attorney lacked authority to enter into a contract binding on defendant need not be, and is not, reached. *Cf. Prestex, Inc.,* 3 Cl.Ct. at 377–79.