**Darren DRAKES, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

No. 92–774C.

United States Court of Federal Claims.

April 30, 1993.

Ronny E. Jones, Washington, DC, for plaintiff.

Luis M. Matos, Washington, DC, with whom was Acting Asst. Atty. Gen. Stuart E. Schiffer, for defendant. W. Mark Nebeker, Asst. U.S. Atty., of counsel.

### ORDER

NETTESHEIM, Judge.

This case, before the court on defendant's motion to dismiss for failure to state a claim upon which relief can be granted, calls into question the nature of the Government's obligation to protect informants. Argument is deemed unnecessary.

### FACTS

Darren Drakes ("plaintiff") was arrested on March 8, 1990, for alleged distribution of heroin. He waived extradition from Ma-

ryland to the District of Columbia. The Government's Motion for Preventive Detention was heard and granted on March 14, 1990. A Motion for Revocation of Detention Order filed by plaintiff on March 30, 1990, was denied on April 4, 1990. On the following day, plaintiff was indicted in Criminal Case No. 90–156 on two counts of distribution of heroin. On May 2, 1990, plaintiff again sought review of his conditions of release by serving a bond review motion on the Government. This motion was opposed by the Government on May 8, 1990, and was denied on May 18, 1990.

On May 29, 1990, plaintiff was indicted in Criminal Case No. 90–235 for conspiracy to distribute heroin, possession with intent to distribute heroin, and another related narcotics offense. On June 6, 1990, Assistant United States Attorney Russell D. Duncan ("AUSA") made a written plea offer to plaintiff to resolve both cases pending against him. The plea offer stated in part that

> [s]hould Mr. Drakes receive any threats or intimidating communications in connection with his cooperation in this case, the United States Attorney's Office and the Federal Bureau of Investigation will take any and all necessary and reasonable measures to protect him. In that regard, the United States Attorney's Office will write to the Bureau of Prisons to ensure that Mr. Drakes is incarcerated in a facility separate and apart from that of any persons in this case with a motive to harm him.

On June 14 plaintiff's attorney, Ronny E. Jones, informed AUSA Duncan that plaintiff had been approached in the jail where he was being held and told not to reveal any information about an individual who was apparently an acquaintance of plaintiff. Plaintiff's attorney also informed AUSA Duncan that plaintiff wanted to be released from prison pending sentencing. No action was taken by the Government in response to this information.

The written plea offer was signed by plaintiff's attorney on June 21, 1990. On the same day, plaintiff entered a plea of guilty in both criminal cases pending against him. Sentencing was scheduled for October 19, 1990.

On July 5, 1990, plaintiff's attorney again contacted AUSA Duncan to inquire whether plaintiff would continue to be detained pending sentencing. Plaintiff's attorney was advised that plaintiff's release was originally rejected and that the presumption at that time was against release. AUSA Duncan indicated, however, that he would consider recommending release after interviewing plaintiff.

On July 10, 1990, plaintiff's attorney advised AUSA Duncan that plaintiff had been stabbed while in custody. On July 16, 1990, at plaintiff's request, AUSA Charles Ambrose initiated a priority move of plaintiff to Alexandria, Virginia. On the same day, plaintiff's attorney served a Motion for Bond Review seeking plaintiff's release from jail. This motion was granted and plaintiff was subsequently released, pending sentencing, on July 17, 1990. Plaintiff was sentenced on October 19, 1990, to 36 months incarceration in Criminal Case No. 90–235 and to one year in Criminal Case No. 90–156, to be served concurrently.

On November 9, 1992, plaintiff filed his complaint in the Court of Federal Claims alleging a breach of contract with the Government giving rise to a claim under the Tucker Act, 28 U.S.C. § 1491(a)(1) (1988). Plaintiff alleges that the plea agreement signed by plaintiff and the United States Attorney's Office created a contract binding on both parties. By this contract the Government allegedly promised to provide protection to plaintiff in return for plaintiff's cooperation in certain criminal investigations. According to plaintiff, the Government breached this agreement by failing to protect plaintiff when given notice that he was in danger. As a result of the stabbing, plaintiff asks for damages of $250,000.00, plus interest and costs.

## DISCUSSION

Defendant moved to dismiss the complaint for failure to state a claim pursuant to RCFC 12(b)(4). Defendant argues that plaintiff fails to allege the formation of a contract with the Government. Citing *Ka-*

*nia v. United States,* 227 Ct.Cl. 458, 650 F.2d 264, *cert. denied,* 454 U.S. 895, 102 S.Ct. 393, 70 L.Ed.2d 210 (1981), defendant asserts that enforcement of plea agreements is restricted to the criminal courts that approve them. In *Kania* the Court of Claims held that it lacked jurisdiction over a suit based on an agreement between plaintiff and the Government wherein the Government agreed not to prosecute plaintiff for any of his actions at his former place of employment in return for good-faith testimony before a grand jury. The court pointed out that plaintiff failed to refer to any applicable provision in the Constitution or mention any statute or regulation entitling him to recover damages against the Government as required by the Tucker Act. In addition, defendant relies on *Grundy v. United States,* 2 Cl.Ct. 596 (1983), for the proposition that the contract basis for jurisdiction of the court is limited to instances wherein the Government contracts in its non-sovereign capacity, or specifically for the payment of money. In *Grundy* plaintiff alleged breach of an implied contract with the United States Marshals Service in connection with operation of a "safehouse" for protection of witnesses waiting to testify in federal criminal cases. The court held that the alleged contract at issue was not the kind the Government would enter into in a non-sovereign capacity so as to give the Claims Court jurisdiction on the basis of a government contract. Since the plea agreement in this case was a sovereign act and the AUSA who signed the agreement did not have the authority to obligate appropriated funds, defendant argues, the court lacks jurisdiction to hear plaintiff's claim. With its motion, defendant submitted the Declaration of Joan P. Fegan, Administrative Officer for the United States Attorney for the District of Columbia, stating that AUSA Duncan had no authority to require appropriated funds on behalf of the United States.

Plaintiff correctly interprets *Kania* as allowing the court to premise contract liability for breach of a plea agreement on a finding of specific authority by the AUSA to bind the Government to pay money and specific procedures in the agreement to determine how liability in the event of breach is to be determined. 227 Ct.Cl. at 465, 650 F.2d at 268. He argues that the authority to bind the Government stems from the AUSA's authority to expend money to care for and protect plaintiff. In addition, the agreement was signed by AUSA William J. O'Malley, Jr., for Jay B. Stephens, the United States Attorney for the District of Columbia, both of whom, plaintiff claims, had authority to bind the Government. Plaintiff asserts that *Kania*'s requirements are met by showing that the AUSA had actual authority to make an agreement obligating the Government to pay money and that the Government was aware of the threat to plaintiff and failed to protect him. Plaintiff distinguishes *Grundy* on the ground that the Government agents in that case did not have authority to expend Government money for plaintiff's benefit, since he was not a witness. Plaintiff in *Grundy* was not a party to the agreement to pay money. The money in that case was to be paid by the Government to the owners of a safehouse rented by the Government, not to plaintiff who operated a business on the property.

### 1. *Standard for motion to dismiss*

■ For the purposes of a motion to dismiss for failure to state a claim, the facts alleged in the complaint are construed in the light most favorable to the non-moving party, *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974), and the facts alleged in the complaint are deemed to be true. *Reynolds v. Army and Air Force Exch. Serv.,* 846 F.2d 746, 747 (Fed.Cir.1988). "[T]he accepted rule is that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957) (footnote omitted).

### 2. *Requirements for formation of contracts with the Government*

■ The Tucker Act provides the Court of Federal Claims with the jurisdiction to

hear certain suits against the sovereign. *United States v. Testan*, 424 U.S. 392, 399, 96 S.Ct. 948, 953–54, 47 L.Ed.2d 114 (1976). However, the Tucker Act does not create a substantive right of recovery against the United States for money damages. *Eastport Steamship Corp. v. United States*, 178 Ct.Cl. 599, 607, 372 F.2d 1002, 1007–09 (1967). Instead, an action may be maintained in the Court of Federal Claims only if it is "founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1).

■ Under the Tucker Act, the Government is not liable in contracts for "every agreement, understanding, or compact which can semantically be stated in terms of offer or acceptance or meeting of minds...." *Kania*, 227 Ct.Cl. at 464, 650 F.2d at 268. Rather, contract liability arises in instances "where the sovereign steps off the throne and engages in ... transactions such as private parties, individuals or corporations also engage in among themselves...." *Id.* The Government is not liable for damages resulting from sovereign acts performed by it in its sovereign capacity. *Commonwealth of Ky. v. United States*, 27 Fed.Cl. 173, 179 (1992); *Grundy*, 2 Cl.Ct. at 598. Whether an act is performed in the Government's sovereign capacity is determined by the nature of the act. *Commonwealth of Ky.*, 27 Fed.Cl. at 179. Although the Government possesses characteristics of both contractor and sovereign, the United States cannot be made liable in one capacity while acting in another. *Horowitz v. United States*, 267 U.S. 458, 461, 45 S.Ct. 344, 344–45, 69 L.Ed. 736 (1925).

■ The plea agreement concluded between plaintiff and the Government manifestly was an act executed by the Government in its sovereign capacity. Administering the criminal justice system is an activity that lies at the heart of sovereign action. As such, breach of a contract arising out of that system does not give rise to an action under the Tucker Act for money damages. While the Court of Claims mentioned in *Kania* that it was "possible to make a binding contract subject to Tucker Act jurisdiction, creating a liability for breach of a plea bargaining agreement or one ... to protect a witness," *Kania*, 227 Ct.Cl. at 465, 650 F.2d at 268, this situation does not obtain in plaintiff's case. Such liability could be established only if the court can find (1) specific authority of the AUSA to make an agreement obligating the United States to pay money and (2) specific language in the agreement "spelling out how in such a case the liability of the United States is to be determined...." *Id.*

■ No contract binding the Government in contract can be created absent actual authority of the Government's agent to bind the Government. *Scope Enterprises, Ltd. v. United States*, 18 Cl.Ct. 875, 881 (1989). Plaintiff asserts that the agreement was signed by AUSA O'Malley and "had the stamp" of United States Attorney Jay Stephens, indicating that "the final agreement was approved by a member of the U.S. Attorney's Office capable of obligating the payment of funds." Plf's Br. filed Mar. 26, 1993, at 5, 6. While United States Attorney Stephens' name appears on the signature section of the agreement, it was signed "for" him by AUSA O'Malley. The issue of whether there was valid authority on behalf of the Government in entering into the plea agreement has not been sufficiently developed. To do so would require converting defendant's motion to a motion for summary judgment, since defendant relies on extra-pleading material to challenge the averment of authority. RCFC 12(b)(4). In the interest of judicial economy, it is not necessary to explore this issue because (1) plaintiff fails to meet the second requirement set forth in *Kania* that the agreement must deliberately spell out the means of determining the Government's liability and (2) the court does not rely on defendant's declarations to resolve the motion to dismiss.

Plaintiff claims that ¶ 7 of the plea agreement fulfills the requirement that the

agreement contain language "spelling out" how the liability of the United States is to be determined. Plf's Br. filed Mar. 26, 1993, at 6. This paragraph, however, merely outlines the obligation of the United States to take measures to protect plaintiff if he should receive intimidating communications. The paragraph contains no discussion of how liability is to be determined in the event of breach. Plaintiff's claim that his injury at the hands of another inmate in itself establishes liability falls short of the specificity envisioned by the Court of Claims in *Kania.*

While plaintiff's claim for damages fails for the reasons stated above, there are even more fundamental considerations that warrant denying plaintiff's claim. These considerations are explored more thoroughly below.

### 3. *Nature of plea agreements*

Plea agreements are a vital part of the criminal justice system that provide benefits to both the state and the criminal defendant. Such agreements allow the state to obtain convictions without the expense and burden of a formal trial. The criminal defendant in turn receives the opportunity to reduce or fix the amount of punishment he will receive while avoiding the risk of greater punishment at trial. *Innes v. Dalsheim,* 864 F.2d 974, 976 (2d Cir.1988). A plea agreement is a device used by criminal courts to facilitate the flow of cases through the criminal justice system. Such agreements, however, are not contracts in the civil sense. *Johnson v. Sawyer,* 980 F.2d 1490, 1501 (5th Cir.1992); *see Innes,* 864 F.2d at 978 (stating that the comparison of "a criminal defendant with a merchant in the marketplace is an inappropriate analogy that we have rejected...." (citation omitted)); *United States v. McGovern,* 822 F.2d 739, 743 (8th Cir.), *cert. denied,* 484 U.S. 956, 108 S.Ct. 352, 98 L.Ed.2d 377 (1987) (stating that a plea agreement "is not simply a contract between two parties...."); *Plaster v. United States,* 720 F.2d 340, 352 (4th Cir.1983) (calling the application of contract law to the plea bargaining process inappropriate since principles of contract law "implicate

entirely different concerns of economic efficiency in a situation involving equally strong parties...."). As the Court of Claims noted in *Kania,* it is unlikely that in passing the Tucker Act, Congress "intended for this court to intervene in the delicate and sensitive business of conducting criminal trials...." 227 Ct.Cl. at 466, 650 F.2d at 269 (citation omitted).

Being a creation of the criminal justice system, it is logical that the remedies for breach of a plea agreement are found within that system. The Supreme Court addressed the possible remedies for breach of a plea agreement in *Santobello v. New York,* 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971). In that case, a criminal defendant sought to withdraw his guilty plea after the state prosecutor failed to honor an agreement not to make any recommendations at sentencing. The Court held that the defendant was entitled to relief for breach of the plea agreement, but the form of this relief was left to the discretion of the trial judge. The judge could either require specific performance of the agreement or allow the defendant to withdraw his guilty plea. *Id.* at 263, 92 S.Ct. at 499.

Since *Santobello* was decided, courts have consistently limited relief for breach of plea agreements to the criminal courts in which they were concluded and allowed either specific performance or withdrawal of the guilty plea. *See Mabry v. Johnson,* 467 U.S. 504, 104 S.Ct. 2543, 81 L.Ed.2d 437 (1984); *United States v. Kurkculer,* 918 F.2d 295, 299 (1st Cir.1990); *United States v. $228,536.00,* 895 F.2d 908, 914 (2d Cir.1990); *McGovern,* 822 F.2d at 746; *United States v. Griffin,* 816 F.2d 1, 5 (D.C.Cir.1987); *Plaster,* 720 F.2d at 351. Consistent with this practice, a breach of a plea agreement in a criminal court cannot give rise to civil remedies such as money damages. *Johnson,* 980 F.2d at 1501.

Plea agreements are creations of the criminal justice system and must remain within that system for enforcement. Recourse to this court for monetary damages for breach of such agreements is insupportable by law. While the court finds the

events giving rise to this suit unfortunate, plaintiff's remedy, if any, lies elsewhere than the Tucker Act and the Court of Federal Claims.

Simply put, plaintiff's suit rests on the false assumption that a plea agreement can transcend the criminal justice arena and create independent rights in a civil context. Plaintiff fundamentally misunderstands the function of plea agreements in our judicial system and at the same time misconstrues the contract-based jurisdiction of the Court of Federal Claims. Because plaintiff's complaint fails to establish any foothold for the contract-based jurisdiction of this court, the complaint must be dismissed.

## CONCLUSION

Accordingly, based on the foregoing, defendant's motion to dismiss is granted. The Clerk of the Court shall enter judgment dismissing the complaint.

No costs.