**Shahram Amir SADEGHI, Plaintiff,**

v.

**The UNITED STATES Defendant.**

**No. 99–403C.**

United States Court of Federal Claims.

May 5, 2000.

---

Shahram A. Sadeghi, pro se, Oakdale, LA, plaintiff.

Matthew P. Reed, Commercial Litigation Branch, Civil Division, Department of Justice, Washington, D.C. for defendant. With him on the briefs were David W. Ogden, Acting Assistant Attorney General, David M. Cohen, Director, and Kirk T. Manhardt, Assistant Director. Sean O'Neill, Office of General Counsel, Federal Bureau of Investigation, was of counsel.

## OPINION

SMITH, Chief Judge.

This matter is before the court on defendant's motion to dismiss pursuant to 12(b)(1) of the Rules of the United States Court of Federal Claims (RCFC) for lack of subject matter jurisdiction and RCFC 12(b)(4) for failure to state a claim for which relief can be granted. Plaintiff seeks $10,000,000 in damages for an alleged breach of contract arising from an oral promise made by the United States government. Defendant replies that the power to enforce any such agreement is beyond the scope of this court's jurisdiction. In the alternative, defendant asserts that the parties with whom plaintiff entered the agreement lacked actual authority to bind the United States. After reviewing the parties' briefs, the court finds that it is without jurisdiction over the agreement at issue and hereby GRANTS defendant's motion.

## FACTS

Plaintiff Shahram Sadeghi is a native and citizen of Iran who came to the United States in October 1993 on a student visa. In March 1996, he plead guilty to violation of 18 U.S.C. § 1951 (attempted robbery) and 18 U.S.C. § 912 (impersonating a federal official), and he is currently serving a five year sentence in federal prison.

Plaintiff alleges that in February 1996 he was approached by several FBI agents and an Assistant United States Attorney (AUSA) seeking information regarding terrorist activities against the United States. He further alleges that the parties then reached an oral agreement in which the AUSA extended immunity to the plaintiff from prosecution for any crimes uncovered as a result of his coop-

eration. Plaintiff contends that this oral agreement included an implied promise by the United States to protect him from any retaliation by the Iranian government. In June 1997, plaintiff contacted the AUSA to request protection upon his release from prison, but the United States refused to acknowledge any such obligation. Plaintiff initiated this suit to recover $10,000,000 for breach of the implied contract. The question presented is whether the agreement is enforceable in this court.

## DISCUSSION

### I. STANDARD OF REVIEW

In ruling on a motion to dismiss under RCFC 12(b)(1) or RCFC 12(b)(4), the court must accept as true the complaint's allegations and construe the facts in the light most favorable to the plaintiff. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); however, where the moving party questions the subject matter jurisdiction of the court, the nonmoving party has the burden of proving the court's jurisdiction. *Doe v. United States,* 37 Fed.Cl. 74, 76 (citing *Reynolds v. Army and Air Force Exch. Serv.,* 846 F.2d 746, 748 (Fed.Cir.1988); *Cincinnati Elecs. Corp. v. United States,* 32 Fed.Cl. 496, 500 (1994)). RCFC 12(b)(4) authorizes dismissal of a complaint if, assuming the truth of all allegations, it fails to state a claim upon which relief may be granted as a matter of law. Dismissal is also appropriate whenever "it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *See Scheuer,* 416 U.S. at 236, 94 S.Ct. at 1686 (1974)(quoting *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957)).

### II. JURISDICTION

Under the Tucker Act, this court has the jurisdiction to "render judgment upon any claim against the United States founded ... upon the Constitution, or any Act of Congress, or any regulation of an executive department, or upon any express or implied contract with the United States." 28 U.S.C.

§ 1491 (1988). The Tucker Act is only a jurisdictional statute. It does not create any substantive right of enforcement against the United States for money damages, but merely enables the court to hear those cases in which a substantive right is claimed. *Eastport S.S. Corp. v. United States,* 372 F.2d 1002, 1007–1009, 178 Ct.Cl. 599, 605–607 (1967).

The *pro se* plaintiff in this case has not invoked any constitutional provision, statute, or regulation as the substantive basis of his claim. The court therefore assumes that the suit is based on an "express or implied contract with the United States." However, the contract liability over which this court has been granted jurisdiction does not extend to every situation in which the government may be said to have entered into an agreement. *See Kania v. United States,* 227 Ct. Cl. 458, 650 F.2d 264, 268, *cert. denied* 454 U.S. 895, 102 S.Ct. 393, 70 L.Ed.2d 210 (1981).

> The Congress undoubtedly had in mind as the principal class of contract case in which it consented to be sued, the instances where the sovereign steps off the throne and engages in purchase and sale of goods, lands, and services, transactions such as private parties, individuals or corporations also engage in among themselves.

*Id.* Thus, the court's jurisdiction in the contract area is generally limited to those cases in which the government acts in its non-sovereign capacity. *See Doe,* 37 Fed.Cl. at 77 (citing *Town of North Bonneville, Wash. v. United States,* 5 Cl.Ct. 312, 320 (1984)). Because administering the criminal justice system is an activity that lies at the heart of sovereign action, breach of contract arising out of the criminal justice system does not ordinarily give rise to an action under the Tucker Act for damages. *Drakes v. United States,* 28 Fed.Cl. 190, 193 (1993).

When the government is acting in its sovereign capacity, jurisdiction under the Tucker Act is limited to those cases in which the court finds "(1) specific authority of the AUSA to make an agreement obligating the United States to pay money and (2) specific language in the agreement 'spelling out how in such a case the liability of the United States is to be determined.'" *Id.* (quoting *Kania,* 227 Ct.Cl. at 465, 650 F.2d at 268). The sovereign's consent to be sued cannot be implied but must be unequivocally expressed. *Kania,* 650 F.2d at 269 (citing *United States v. Testan,* 424 U.S. 392, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976)). Absent such an expression, this court has consistently found that it lacks jurisdiction over suits asserting the breach of plea bargains, immunity agreements, and witness protection agreements. *See Doe v. United States,* 37 Fed.Cl. 74 (1996); *Drakes v. United States,* 28 Fed.Cl. 190 (1993); *Grundy v. United States,* 2 Cl.Ct. 596 (1983); *Kania v. United States,* 227 Ct. Cl. 458, 650 F.2d 264, 268, *cert. denied* 454 U.S. 895, 102 S.Ct. 393, 70 L.Ed.2d 210 (1981).

### A. The Plea Agreement

Plaintiff's specific allegations and legal theories have been clarified and refined through two rounds of complaints and motions. In his initial complaint, plaintiff stated that his negotiations with the FBI agents and the AUSA took place while he was in federal custody, a custody presumably related to the charges to which he later plead guilty. Compl. ¶ 3. It is therefore hard to imagine that the ensuing agreement between plaintiff and the AUSA, in which the AUSA allegedly promised to protect the plaintiff, was not part of the larger plea agreement.

Understood in this way, the issue is identical to that which the court addressed in *Drakes.* Like the plaintiff in this case, Drakes was a federal prisoner who sought to enforce a plea agreement in which the AUSA and the FBI promised to protect him. Unlike Sadeghi's, Drake's protection provision was in writing. However, the court was still without jurisdiction to hear the case because the plea agreement was a sovereign act, the AUSA who signed the agreement did not have specific authority to expend resources, and the agreement lacked language specifying how liability would be determined in the event of breach. *See Drakes,* 28 Fed.Cl. at 193–194.

Plaintiff alleges that he received assurances that the offer of protection was autho-

rized by the United States Government. Compl. ¶ 14. Even if we accept this allegation of specific authority, the text of the plea agreement offers no specific language on the determination of liability. In fact, it does not describe the obligation to protect plaintiff at all, although it does contain a clause which specified, "... no additional promises, agreements or conditions have been entered into other than those set forth in this document..." Def.'s Ex. 2 at 4. Plaintiff confirmed before Judge Louis H. Pollak that he had agreed to this clause. Def.'s Ex. 3, Tr. at 4d, United States District Court for the Eastern District of Pennsylvania, CR–96–13, March 27, 1996.

The plea agreement is a creation of the criminal justice system and contains no specific language on the determination of liability. These reasons alone place the alleged protection provision outside the jurisdiction of this court. An even more fundamental concern, however, is the parol evidence rule's prohibition against "the introduction of prior or contemporaneous evidence inconsistent with the written agreement." *Cooper Realty Co. v. United States*, 36 Fed.Cl. 284, 288 (Fed.Cl.1996). Here, not only does the written plea agreement fail to mention the alleged oral promise, made a month earlier, it specifically states that no such promise exists.

### B. The Immunity Agreement

In his Opposition to Defendant's Motion to Dismiss and subsequent First Amended Complaint, Sadeghi offers a more refined characterization of his agreement with the AUSA. Those documents suggest that the protection agreement is not a part of the plea agreement at all, but part of a discrete immunity agreement. The First Amended Complaint clarifies that the AUSA offered, in exchange for intelligence on Iranian terrorist activities, immunity from prosecution for crimes uncovered as a result of plaintiff's cooperation. Plaintiff states that he entered into this agreement "with expectation to receive protection and care from adverse consequences of his testimony." The protection provision at issue thus amounts to an implied component of an immunity agreement.

Accepting this characterization does not alter the analysis or the conclusion that must be drawn. The same facts were presented in *Kania*. There, the plaintiff sought to enforce an oral immunity agreement with an AUSA. As described more fully above, the court could not find jurisdiction under the Tucker Act, as jurisdiction generally lay only in "instances where the sovereign steps off the throne," unless the AUSA had specific authority and the agreement specified how the United States' liability for breach would be determined. *Kania*, 650 F.2d at 267. The latest edition of plaintiff's complaint suggests that the promise of protection was implied. It follows that no specific, let alone "unequivocal," agreement was reached regarding the determination of the United States' liability, and the plaintiff makes no such allegation. *See id.* at 269 (citing *United States v. Testan*, 424 U.S. 392, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976)).

### C. The Witness Protection Agreement

Most recently, in his Reply to Defendant's Motion to Dismiss Plaintiff's First Amended Complaint, plaintiff argues that he is not seeking the enforcement of an immunity agreement, but only of the AUSA's implied promise to provide protection to the plaintiff.

The court has considered protection agreements more than once, and the outcome has remained consistent with the principles of *Kania*. The plaintiff in *Grundy*, for example, leased his property to the United States Department of Justice for use as a "safehouse" for prospective organized crime witnesses. The agreement between Grundy and the United States Marshal included oral assurances that Grundy would come to no harm by reason of his cooperation with the government and that the United States Marshals Service would protect Grundy if he were placed in danger. Yet, even when he alleged that various members of organized crime threatened him and his family and drove him into bankruptcy, this court found enforcement of the protection agreement to be beyond its jurisdiction. *Grundy*, 2 Cl.Ct. at 598 (1983). Citing *Kania* for the proposition that "jurisdiction of this court is ... limited to situations where the government contracts

in a non-sovereign capacity, or, at the least, contracts for the payment of money," the court concluded that "[t]he alleged contract here was not of a kind which the government would make in a non-sovereign capacity" *Id.* Moreover, the United States Marshal was found not to have had actual authority to enter into the agreement.

Grundy's situation differed from that of the plaintiff here in that Grundy was not in custody when he entered into his agreement with the United States Marshal Service. Because the plaintiff here was in custody when he entered into the alleged agreement, the sovereign nature of the agreement is even more apparent, and *Kania's* reasoning should still apply. Indeed, that is what the court ruled in *Drakes.* In *Drakes,* also described above, the plaintiff was a federal prisoner who sought damages for breach of an agreement to protect him while in custody. As described above, the court was without jurisdiction to hear the case because the plea agreement was a sovereign act, the AUSA who signed the agreement did not have specific authority, and the agreement lacked language specifying how liability would be determined in the event of breach. *Drakes,* 28 Fed.Cl. at 193–194. This court does not have jurisdiction over an agreement, like the one here, that is a "creation of the criminal justice system." *Doe,* 37 Fed.Cl. at 78 (quoting *Drakes,* 28 Fed.Cl. at 194). These types of agreements generally do not involve the type of promises, mutuality, bargaining, and consideration that is the essence of contract.

## *CONCLUSION*

Although plaintiff characterizes the case in several ways, there is really one issue: plaintiff seeks damages for the alleged breach of an implied contract with an AUSA. Plaintiff's agreement, like the oral immunity agreement in *Kania,* the oral protection agreement in *Grundy,* and the written protection agreement in *Drakes,* is a creation of the criminal justice system. Breach of contract arising out of the criminal justice system does not give rise to an action under the Tucker Act for money damages except under particular circumstances. Here the implied

contract plaintiff describes lacked the authority of the AUSA to make an agreement obligating the United States to pay money. It also lacked specific language spelling out how the liability of the United States was to be determined. Accordingly, this court is without jurisdiction to hear this case.

The courts, in their contract jurisdiction, are ill-suited to manage the different purposes that agreements made within the criminal justice system serve. *See Doe,* 37 Fed. Cl. at 78 (citing *Drakes,* 28 Fed.Cl. at 194–195). Remedies for the breach of such agreements are found within that system, in the court to which "the high function of enforcing and policing criminal law is assigned." *Kania,* 650 F.2d at 268.

Accordingly, the defendant's motion is GRANTED, and the Clerk of the Court is directed to DISMISS plaintiff's complaint. **IT IS SO ORDERED.**