Dennis J. PAPPAS, Plaintiff,

v.

**UNITED STATES, Defendant.**

No. 05–219C.

United States Court of Federal Claims.

Filed: June 8, 2005 [1].

Reissued for Publication July 11, 2005.

Richard A. Mastrocola, Blodnick, Gordon, Fletcher & Sibell, P.C., Westbury, NY, for plaintiff.

Thomas A. McFarland, Assistant United States Attorney for the Eastern District of New York; Roslynn R. Mauskopf, United States Attorney for the Eastern District of New York, Central Islip, NY; Peter D. Keisler, Assistant Attorney General, Department of Justice, Washington, DC, for defendant.

## OPINION

HORN, Judge.

Dennis J. Pappas, plaintiff, brings this action against the government seeking $10,000,000.00 in damages for allegedly breaching an agreement not to prosecute the plaintiff. The government has moved to dismiss the action for lack of subject matter jurisdiction. The facts, construed in a light most favorable to the non-moving party, Mr. Pappas, are as follows.

### FINDINGS OF FACT

According to the complaint, [deleted] Dennis J. Pappas, the plaintiff, entered into an agreement with the defendant United States (the Agreement) to provide services to the government, while maintaining the government's confidentiality. In exchange, the plaintiff alleges that the government promised to abandon an ongoing investigation concerning criminal charges against Mr. Pappas and not to indict him for criminal wrongdoing. According to Mr. Pappas, [deleted] he had completed the services required in the alleged Agreement.

Also, according to Mr. Pappas, in April, 1995, the government allegedly violated the Agreement by indicting, arresting, and arraigning him for racketeering and Internal Revenue Code violations. Mr. Pappas remained in pre-trial custody. He was re-

1. This opinion was issued under seal on June 8, 2005. *The parties were instructed to identify material which should be redacted. The original* opinion is reissued with the resulting redactions *indicated by the designation, "[deleted]."*

leased in November of 1998 after being sentenced according to a plea agreement in which he pled guilty to racketeering and tax evasion. In the plea agreement, among other considerations, Mr. Pappas agreed to waive his right to appeal the criminal conviction or to challenge the sentence. [deleted]

After the plaintiff had expressed an intention to publicly reveal information encompassed within the Agreement, the United States, citing a non-disclosure agreement, obtained a protective order prohibiting Mr. Pappas from such disclosures. Mr. Pappas subsequently met with reporters, after which the United States District Court for the Eastern District of New York issued a supplemental protective order. The plaintiff appealed to the United States Court of Appeals for the Second Circuit. The Circuit Court dismissed the appeal in part and remanded to the trial court to decide if the Agreement/contract between the government and Mr. Pappas entitled the government to a protective order barring disclosure of information received from the government prior to the litigation and already made public and whether the issue should be decided as part of the pending criminal case or in a civil suit. *United States v. Pappas,* 94 F.3d 795, 798, 802 (2d Cir.1996). Upon remand, the District Court judge directed that a civil proceeding be filed.

During Mr. Pappas' pre-trial incarceration, the government initiated the civil action, under seal, in the United States District Court for the Eastern District of New York against Mr. Pappas [deleted]. The government sought injunctive relief prohibiting Mr. Pappas from discussing his dealings with the government and sought specific performance of the Agreement. The civil action was stayed pending resolution of Mr. Pappas' criminal case. After his plea agreement, conviction, and release, Mr. Pappas responded to the government's civil action by filing a counterclaim in District Court seeking breach of contract damages of $10,000,000.00, because, according to the plaintiff, the government allegedly had breached the Agreement by indicting him. In 1999, the government voluntarily dismissed its claim in the civil action in District Court in the Eastern

District of New York, leaving only Mr. Pappas' breach of contract claim. The United States District Court for the Eastern District of New York transferred the plaintiff's remaining breach of contract claim to this court.

The plaintiff filed a new complaint in this court in accordance with this court's rules. According to Mr. Pappas, in this court he is seeking specific monetary damages, claiming that any equitable remedy to enjoin the government from criminal prosecution has been rendered moot because he has already been convicted, sentenced, imprisoned, and subjected to post release supervision. The government has filed a motion to dismiss the action for lack of subject matter jurisdiction, to which the plaintiff has filed a response in opposition.

## DISCUSSION

Subject matter jurisdiction may be challenged at any time by the parties, by the court *sua sponte,* and even on appeal. *Fanning, Phillips, Molnar v. West,* 160 F.3d 717, 720 (Fed.Cir.1998) (quoting *Booth v. United States,* 990 F.2d 617, 620 (Fed.Cir.), *reh'g denied* (1993)); *United States v. Newport News Shipbuilding and Dry Dock Co.,* 933 F.2d 996, 998 n. 1 (Fed.Cir.1991). A plaintiff must establish jurisdiction by a preponderance of the evidence. *Reynolds v. Army and Air Force Exch. Serv.,* 846 F.2d 746, 748 (Fed.Cir.1988); *Thomas v. United States,* 56 Fed.Cl. 112, 115 (2003); *Martinez v. United States,* 48 Fed.Cl. 851, 857 (2001), *aff'd in part,* 281 F.3d 1376 (Fed.Cir.), *reh'g denied* (2002); *Bowen v. United States,* 49 Fed.Cl. 673, 675 (2001), *aff'd,* 292 F.3d 1383 (Fed.Cir. 2002); *Vanalco, Inc. v. United States,* 48 Fed.Cl. 68, 73 (2000); *Alaska v. United States,* 32 Fed.Cl. 689, 695 (1995), *appeal dismissed,* 86 F.3d 1178 (Fed.Cir.1996) (table). When construing the pleadings pursuant to a motion to dismiss, the court should grant the motion only if "it appears beyond doubt that [the plaintiff] can prove no set of facts in support of [the] claim which would entitle [the plaintiff] to relief." *Davis v. Monroe County Bd. of Educ.,* 526 U.S. 629, 654, 119 S.Ct. 1661, 143 L.Ed.2d 839 (1999) (quoting *Conley v. Gibson,* 355 U.S. 41, 46, 78

S.Ct. 99, 2 L.Ed.2d 80 (1957)); *Brubaker Amusement Co. v. United States,* 304 F.3d 1349, 1355 (Fed.Cir.2002), *cert. denied sub nom. Penn Triple S v. United States,* 538 U.S. 921, 123 S.Ct. 1570, 155 L.Ed.2d 311 (2003); *Leider v. United States,* 301 F.3d 1290, 1295 (Fed.Cir.2002), *reh'g and reh'g en banc denied* (2002), *cert. denied,* 538 U.S. 978, 123 S.Ct. 1786, 155 L.Ed.2d 666 (2003); *Conti v. United States,* 291 F.3d 1334, 1338 (Fed.Cir.), *reh'g en banc denied* (2002), *cert. denied,* 537 U.S. 1112, 123 S.Ct. 904, 154 L.Ed.2d 785 (2003); *Consol. Edison Co. v. O'Leary,* 117 F.3d 538, 542 (Fed.Cir.1997), *cert. denied sub nom. Consol. Edison Co. v. Pena,* 522 U.S. 1108, 118 S.Ct. 1036, 140 L.Ed.2d 103 (1998); *see also New Valley Corp. v. United States,* 119 F.3d 1576, 1579 (Fed.Cir.1997), *reh'g denied, and reh'g en banc declined* (1997); *Highland Falls–Fort Montgomery Cent. School Dist. v. United States,* 48 F.3d 1166, 1169 (Fed.Cir.), *cert. denied,* 516 U.S. 820, 116 S.Ct. 80, 133 L.Ed.2d 38 (1995); *Hamlet v. United States,* 873 F.2d 1414, 1416 (Fed.Cir.1989); *W.R. Cooper Gen. Contractor, Inc. v. United States,* 843 F.2d 1362, 1364 (Fed.Cir.1988) ("When the facts alleged in the complaint reveal 'any possible basis on which the non-movant might prevail, the motion must be denied.' "); *RCS Enters., Inc. v. United States,* 46 Fed.Cl. 509, 513 (2000).

Pursuant to RCFC 8(a)(1) and Rule 8(a)(1) of the Federal Rules of Civil Procedure, a plaintiff need only state in the complaint "a short and plain statement of the grounds upon which the court's jurisdiction depends." RCFC 8(a)(1). However, "[d]etermination of jurisdiction starts with the complaint, which must be well-pleaded in that it must state the necessary elements of the plaintiff's claim, independent of any defense that may be interposed." *Holley v. United States,* 124 F.3d 1462, 1465 (Fed.Cir.1987), *reh'g denied* (1997) (citing *Franchise Tax Bd. v. Constr. Laborers Vacation Trust,* 463 U.S. 1, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983)). Nevertheless, "conclusory allegations unsupported by any factual assertions will notwithstand a motion to dismiss." *Briscoe v. LaHue,* 663 F.2d 713, 723 (7th Cir.1981), *aff'd,* 460 U.S. 325, 103 S.Ct. 1108, 75 L.Ed.2d 96 (1983); *Bradley v. Chiron Corp.,* 136 F.3d 1317, 1322 (Fed.Cir.

1998) ("Conclusory allegations of law and unwarranted inferences of fact do not suffice to support a claim.").

When deciding a motion to dismiss based on a lack of subject matter jurisdiction, this court must assume that all undisputed facts alleged in the complaint are true and must draw all reasonable inferences in the non-movant's favor. *See Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *Conley v. Gibson,* 355 U.S. at 45–46, 78 S.Ct. 99; *Boise Cascade Corp. v. United States,* 296 F.3d 1339, 1343 (Fed.Cir.2002), *cert. denied,* 538 U.S. 906, 123 S.Ct. 1484, 155 L.Ed.2d 226 (2003); *Pixton v. B & B Plastics, Inc.,* 291 F.3d 1324, 1326 (Fed.Cir.2002); *Commonwealth Edison Co. v. United States,* 271 F.3d 1327, 1338 (Fed.Cir.2001) (quoting *New Valley Corp. v. United States,* 119 F.3d at 1580), *cert. denied,* 535 U.S. 1096, 122 S.Ct. 2293, 152 L.Ed.2d 1051 (2002); *Boyle v. United States,* 200 F.3d 1369, 1372 (Fed.Cir. 2000); *Perez v. United States,* 156 F.3d 1366, 1370 (Fed.Cir.1998); *Highland Falls–Fort Montgomery Cent. School Dist. v. United States,* 48 F.3d at 1167 (citing *Gould, Inc. v. United States,* 935 F.2d 1271, 1274 (Fed.Cir. 1991)); *Henke v. United States,* 60 F.3d 795, 797 (Fed.Cir.1995); *Hamlet v. United States,* 873 F.2d at 1416; *Ho v. United States,* 49 Fed.Cl. 96, 100 (2001), *aff'd,* 30 Fed.Appx. 964 (Fed.Cir.2002); *Alaska v. United States,* 32 Fed.Cl. at 695. If a defendant or the court challenges jurisdiction or plaintiff's claim for relief, however, the plaintiff cannot rely merely on allegations in the complaint, but must instead bring forth relevant, competent proof to establish jurisdiction. *McNutt v. Gen. Motors Acceptance Corp. of Ind.,* 298 U.S. 178, 189, 56 S.Ct. 780, 80 L.Ed. 1135 (1936); *see also Land v. Dollar,* 330 U.S. 731, 735 n. 4, 67 S.Ct. 1009, 91 L.Ed. 1209 (1947); *Reynolds v. Army and Air Force Exch. Serv.,* 846 F.2d at 747; *Catellus Dev. Corp. v. United States,* 31 Fed.Cl. 399, 404–05 (1994).

In order for this court to have jurisdiction over a plaintiff's complaint, the Tucker Act requires that the plaintiff identify an independent substantive right enforceable against the United States for money damages. 28 U.S.C. § 1491 (2000). The Tucker Act states:

The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.

28 U.S.C. § 1491(a)(1). As interpreted by the United States Supreme Court, this Act waives sovereign immunity to allow jurisdiction over claims (1) founded on an express or implied contract with the United States, (2) seeking a refund from a prior payment made to the government or (3) based on federal constitutional, statutory, or regulatory law mandating compensation by the federal government for damages sustained. *See United States v. Testan,* 424 U.S. 392, 400, 96 S.Ct. 948, 47 L.Ed.2d 114, *reh'g denied,* 425 U.S. 957, 96 S.Ct. 1736, 48 L.Ed.2d 202 (1976) (citing *Eastport S. S.Corp. v. United States,* 178 Ct.Cl. 599, 605–06, 372 F.2d 1002, 1009 (1967)); *see also Palmer v. United States,* 168 F.3d 1310, 1314 (Fed.Cir.1999); *Stinson, Lyons & Bustamante, P.A. v. United States,* 33 Fed.Cl. 474, 478 (1995), *aff'd,* 79 F.3d 136 (Fed.Cir.1996). A waiver of traditional sovereign immunity cannot be implied but must be "unequivocally expressed." *INS v. St. Cyr,* 533 U.S. 289, 299, 121 S.Ct. 2271, 150 L.Ed.2d 347 n. 10 (2001); *United States v. Nordic Village, Inc.,* 503 U.S. 30, 33, 112 S.Ct. 1011, 117 L.Ed.2d 181 (1992); *Ins. Co. of the West v. United States,* 243 F.3d 1367, 1372 (Fed.Cir.2001), *reh'g and reh'g en banc denied* (2001); *Saraco v. United States,* 61 F.3d 863, 864 (Fed.Cir.1995) (quoting *United States v. King,* 395 U.S. 1, 4, 89 S.Ct. 1501, 23 L.Ed.2d 52 (1969)), *cert. denied,* 517 U.S. 1166, 116 S.Ct. 1565, 134 L.Ed.2d 665 (1996).

The Tucker Act, however, merely confers jurisdiction on the United States Court of Federal Claims; " 'it does not create any substantive right enforceable against the United States for money damages.' " *United States v. Mitchell,* 445 U.S. 535, 538, 100 S.Ct. 1349, 63 L.Ed.2d 607 (quoting *United States v. Testan,* 424 U.S. at 398–99, 96 S.Ct. 948), *reh'g denied,* 446 U.S. 992, 100 S.Ct. 2979, 64 L.Ed.2d 849 (1980); *White Moun-*

*tain Apache Tribe v. United States,* 249 F.3d 1364, 1372 (Fed.Cir.2001), *aff'd,* 537 U.S. 465, 123 S.Ct. 1126, 155 L.Ed.2d 40 (2003); *Cyprus Amax Coal Co. v. United States,* 205 F.3d 1369, 1373 (Fed.Cir.2000), *cert. denied,* 532 U.S. 1065, 121 S.Ct. 2214, 150 L.Ed.2d 208 (2001); *New York Life Ins. Co. v. United States,* 118 F.3d 1553, 1555–56 (Fed.Cir. 1997), *cert. denied,* 523 U.S. 1094, 118 S.Ct. 1559, 140 L.Ed.2d 792 (1998); *United States v. Connolly,* 716 F.2d 882, 885 (Fed.Cir.1983) *(en banc ), cert. denied,* 465 U.S. 1065, 104 S.Ct. 1414, 79 L.Ed.2d 740 (1984). Individual claimants, therefore, must look beyond the jurisdictional statute for a waiver of sovereign immunity. *United States v. Mitchell,* 445 U.S. at 538, 100 S.Ct. 1349. In order for a claim to be successful, the plaintiff "must also demonstrate that the source of law relied upon 'can fairly be interpreted as mandating compensation by the federal government for the damages sustained.' " *White Mountain Apache Tribe v. United States,* 249 F.3d at 1372 (quoting *United States v. Mitchell,* 463 U.S. 206, 216–17, 103 S.Ct. 2961, 77 L.Ed.2d 580 (1983)); *United States v. Testan,* 424 U.S. at 400, 96 S.Ct. 948; *Tippett v. United States,* 185 F.3d 1250, 1254 (Fed.Cir.1999) ("[T]he plaintiff must assert a claim under a separate money-mandating constitutional provision, statute, or regulation, the violation of which supports a claim for damages against the United States.") (quoting *James v. Caldera,* 159 F.3d 573, 580 (Fed.Cir.1998), *reh'g denied* (1999)); *Doe v. United States,* 100 F.3d 1576, 1579 (Fed.Cir. 1996), *reh'g and reh'g en banc denied* (1997); *Eastport S. S. Corp. v. United States,* 178 Ct.Cl. at 607, 372 F.2d at 1009.

The government contends that the Agreement in the present case does not give rise to a suit for money damages because the United States was acting in its sovereign capacity rather than as a government contractor in its dealings with Mr. Pappas. In support of this contention, the defendant initially cites the court to *Kania v. United States,* 227 Ct.Cl. 458, 650 F.2d 264, *cert. denied,* 454 U.S. 895, 102 S.Ct. 393, 70 L.Ed.2d 210 (1981). In *Kania,* the plaintiff brought an action for damages against the government for breaching an immunity agreement. *Id.* at 459–62,

650 F.2d at 265–66. The plaintiff agreed to testify before a grand jury against his past employer in exchange for a promise not to prosecute him for his activities while employed. *Id.* at 460–62, 650 F.2d at 266. After testifying before the grand jury as agreed, the plaintiff was nevertheless indicted for his prior criminal activities. *Id.* at 461–62, 650 F.2d at 266–67. The court dismissed the action for lack of subject matter jurisdiction, explaining that:

> The contract liability which is enforceable under the Tucker Act consent to suit does not extend to every agreement, understanding, or compact which can semantically be stated in terms of offer and acceptance or meeting of the minds. The Congress undoubtedly had in mind as the principal class of contract case in which it consented to be sued, the instances where the sovereign steps off the throne and engages in purchase and sale of goods, lands, and services, transactions such as private parties, individuals or corporations also engage in among themselves.

*Kania v. United States,* 227 Ct.Cl. at 464, 650 F.2d at 268.

Similarly, in *Sanders v. United States,* 252 F.3d 1329, 1331 (Fed.Cir.2001), the United States Court of Appeals for the Federal Circuit addressed an alleged breach of an agreement with a criminal defendant concerning his release on bail after trial. The Federal Circuit found that alleged breaches of plea agreements, which are entirely concerned with the conduct of the parties in a criminal case, do not normally give rise to claims for money damages, but for specific performance remedies. *See id.* at 1334–35 (" '[T]he only remedies available for breach of a plea agreement are enforcement of the agreement or affording the defendant an opportunity to withdraw the plea . . . .' ") (quoting *1–95–CV–553–P1 v. 1–95–CV–553–D1,* 75 F.3d 135, 136 (2d Cir.1996)).

The *Sanders* court, however, acknowledged that a breach of an immunity agreement could support a claim for damages under the Tucker Act if a specific remedy was contemplated in the agreement. *See id.* at 1335. The *Sanders* court, quoting and commenting on the *Kania* decision, wrote:

That court did recognize that breach of such an agreement under some circumstances could support a damages claim under the Tucker Act:

> [I]t [is] possible to make a binding contract subject to Tucker Act jurisdiction, creating a liability for breach of a plea bargaining agreement or one to grant immunity for giving testimony, or to protect a witness. *But. in such case, the court would look for specific authority in the AUSA to make an agreement obligating the United States to pay money, and spelling out how in such a case the liability of the United States is to be determined.*

[*Kania v. United States,* 227 Ct.Cl. at 465, 650 F.2d] at 268 (emphasis added [by the *Sanders* court] ). In other words, a claim for money damages for the alleged breach of such an agreement may not be maintained unless that agreement clearly and unmistakably subjects the government to monetary liability for any breach.

*Sanders v. United States,* 252 F.3d at 1335 (emphasis in original).

The decision in *Houston v. United States,* 60 Fed.Cl. 507 (2004), following *Sanders* and *Kania,* similarly described the relationship between the jurisdiction of the United States Court of Federal Claims and Federal District Court criminal proceedings. In *Houston,* the plaintiff sought money damages for an alleged breach by the government of a plea agreement. *Id.* at 509. In its decision to dismiss the action for lack of jurisdiction, the court emphasized the government's role as a sovereign power by noting that plea, immunity, and witness protection agreements are "the type of contract that the government makes in its sovereign capacity, since private parties cannot make agreements with criminal defendants regarding criminal matters." *Id.* at 511. The *Houston* court further noted:

> In general, courts have held that this Court [the Court of Federal Claims] does not have jurisdiction over cases in which the government acts in its sovereign capacity. . . . Without such specific authority, this Court has generally held that it does not possess subject matter jurisdiction

over agreements made in the course of criminal proceedings, such as plea agreements, immunity agreements, and witness protection agreements.

*Houston v. United States*, 60 Fed.Cl. at 511 (citations omitted).

Similarly, in *Drakes v. United States*, 28 Fed.Cl. 190 (1993), the government specifically, and in writing, promised in a plea offer to protect the criminal defendant in return for his cooperation with the government in various criminal investigations. Threats were made to the defendant, and he requested release from jail for his protection, but was not released. After the defendant was injured while in jail, he was released. *Id.* at 191. The alleged breach of the plea agreement was dismissed by the court, which found that the government was not liable for damages resulting from the plea agreement, an act performed by the sovereign in its sovereign capacity and for which no waiver had been granted. *See id.* at 193.

In *Silva v. United States*, 51 Fed.Cl. 374, *aff'd*, 51 Fed.Appx. 12 (Fed.Cir.2002), the government confiscated a number of exotic parrots. Mr. Silva subsequently pled guilty to the illegal importation of protected wildlife, but claimed breach of a breeding agreement between Silva and a private individual who became an informant for the government, and who Silva alleged had entered into the contract on behalf of the government. *Id.* at 375–76. The *Silva* court found that, assuming privity of contract with the government existed, which was by no means clear, the alleged agreement would have been for the purpose of an undercover law enforcement investigation of the illegal importation of wildlife. *Id.* at 377–78. Dismissing the complaint, the court held that: "[T]hese law enforcement operations are activities of the criminal justice system, activities that, without question, lie 'at the heart of sovereign action.'" *Id.* at 377 (quoting *Sadeghi v. United States*, 46 Fed.Cl. 660, 662, *appeal dismissed*, 250 F.3d 762 (Fed.Cir.2000) (table)).

■ Thus, pursuant to *Kania* and the line of cases which followed, Mr. Pappas or any other plaintiff cannot perfect jurisdiction in this court for a claim integrally related to a criminal proceeding unless it is clear that when the government entered into the agreement: (1) the government agents possessed the authority to bind the government to pay money and (2) specific monetary liability had been clearly intended as compensation by the parties in the event of a breach. *See Kania v. United States*, 227 Ct.Cl. at 465, 650 F.2d at 268.

In *Bailey v. United States*, this court found jurisdiction, unlike in the cases discussed above, over a claim for the alleged breach of an oral contract with the government. *See Bailey v. United States*, 54 Fed. Cl. 459 (2002), *aff'd*, *Bailey v. United States*, 94 Fed.Appx. 828 (Fed.Cir.2004). Mr. Bailey, an attorney for a criminal defendant, asserted that he had entered into an oral contract to perform services for the government, separate from the plea agreement between the government and his client. The oral agreement was for Mr. Bailey to assist the government to repatriate foreign assets subject to forfeiture. *See id.* at 463–67. Mr. Bailey alleged that his compensation for performing the duties included in the oral contract was to derive from a stock asset of the criminal defendant's rather than from monetary compensation. *See id.* Mr. Bailey argued that he was entitled to be compensated for his services by his receipt of the actual stock, which was deposited into his Swiss bank account, including any losses or profits derived from the stock, not by a judicially determined amount. *See id.* When finding jurisdiction, this court explained that the claim before the court was for breach of a contract between Mr. Bailey and the government, which called for services on Mr. Bailey's part, the scope of which, asset maintenance, liquidation and repatriation were considered unusual and beyond normal defense counsel duties. A key, credible, senior government witness at trial confirmed the unusual nature of the services as not normally performed by defense counsel. *Id.* at 482. For jurisdictional purposes, the court distinguished the alleged contract the government made with Mr. Bailey to assist in asset forfeiture proceedings from the defendant's plea agreement and the criminal proceedings. The court also noted,

however, that "[i]f [the criminal defendant] subsequently had filed a complaint in the Court of Federal Claims, alleging breach of the plea agreement and seeking money damages, the principles established in *Kania* and *Sanders* would lead to the dismissal of his complaint by the court." *Id.*

■ Mr. Pappas, in his briefs in opposition to the government's motion to dismiss, tried to emphasize the civil nature of his alleged Agreement with the government in an attempt to distinguish it from the criminal-in-nature agreements made in the *Kania* line of cases. Mr. Pappas described the alleged Agreement he had entered into as one for a "service unrelated to any pending criminal proceeding" and argued that the services rendered by a private party must have a nexus with criminal activity or a pending criminal proceeding in order to be dismissed for a lack of jurisdiction. [deleted] [T]he alleged consideration offered by the government for Mr. Pappas' service was for immunity from criminal prosecution, an offer only available from the government in its sovereign capacity. Mr. Pappas was not promised any form of monetary compensation for the services he was to perform, nor has Mr. Pappas alleged that he was promised monetary compensation. Moreover, although the plaintiff in his complaint seeks $10,000,000.00 in damages, he does not describe in his complaint, or in his briefs filed with this court opposing the government's motion to dismiss for lack of jurisdiction, any contractual basis for monetary relief in the event of a breach of the alleged immunity Agreement.

The government's dealings and alleged immunity Agreement with Mr. Pappas were clearly related to the criminal investigation of Mr. Pappas and subsequent indictment. The government, in the case of Mr. Pappas, as well as in *Kania, Sanders, Houston, Silva,* and *Drakes,* discussed above, was acting with regard to criminal matters in its sovereign capacity, not in a civil contracting capacity, when offering immunity and plea arrangements in return for [deleted] services. This court does not have jurisdiction over claims against the government when the government has acted solely in its sovereign capacity on criminal matters. *See Sanders v. Unit-*

*ed States,* 252 F.3d at 1334–36; *Kania v. United States,* 227 Ct.Cl. at 467, 650 F.2d at 269; *Houston v. United States,* 60 Fed.Cl. at 512; *Silva v. United States,* 51 Fed.Cl. at 377–78; *Drakes v. United States,* 28 Fed.Cl. at 193–95.

In contrast, this court had jurisdiction over the claim in *Bailey* because when securing Mr. Bailey's assistance for the property repatriation efforts as part of the forfeiture proceedings, the government was acting in a civil, contracting capacity and the government offered Mr. Bailey monetary value for his services. *See Bailey v. United States,* 54 Fed.Cl. at 482–83. Although Mr. Bailey did not prevail in the action filed in this court due to the failure of the parties to reach a meeting of the minds on the contractual sum, the trial testimony in the case demonstrates discussion between the parties regarding specific monetary compensation. *See id.* at 463–69. Although the alleged agreement with Mr. Bailey was related to a pending criminal prosecution of Mr. Bailey's client, the substance of the contractual dispute was a civil agreement for monetary compensation that was separate from the criminal proceeding. *See id.* In contrast, the government's alleged Agreement with Mr. Pappas to perform services for the government, was negotiated in the context of possible prosecutorial immunity from criminal prosecution for Mr. Pappas, not monetary compensation.

The plaintiff also argues in his brief that since the government originated the foundation of the present action "in civil court alleging that he breached [a] civil agreement," he has successfully availed himself of the jurisdiction of this court. The government's claim, however, was dismissed by the District Court, leaving only Mr. Pappas' counterclaim prior to transfer to this court. Moreover, the government's initiation of a suit in a United States District Court does not automatically confer jurisdiction in the United States Court of Federal Claims, the jurisdiction of which is defined by Congress. Finally, the government's initiation of a civil suit in a United States District Court for injunctive relief and specific performance based on breach of the Agreement, which Mr. Pappas also alleges was breached by the government

**8**

with regards to promises made to him, does not change the criminal nature of that Agreement. The alleged immunity offered to Mr. Pappas in the Agreement in exchange for non-disclosure and services to be performed, could only have been entered into by the government in its sovereign capacity. Monetary compensation by the government was not contemplated in the Agreement for Mr. Pappas' non-disclosure or services and was not contemplated as a remedy in the event of a breach.

Although the court recognizes that Mr. Pappas' case was transferred to this court by a United States District Court, nonetheless, this court does not possess jurisdiction to grant the injunctive relief, specific performance, or monetary damages sought by the plaintiff. Remedies, if any remain, are in the jurisdiction of the court which presided over the criminal prosecution and plea agreement. As stated in *Kania v. United States:*

> It would be reasonable to expect that the court which is to police and, in appropriate cases enforce, agreements for plea bargains, or witness protection, or for immunity, will be the courts in which are or will be pending the criminal prosecutions to which the agreements relate. If this means that money damages for breach are nowhere available, this is the case in any claim area where the Congress has not seen fit to grant its consent to be sued.

*Kania v. United States,* 227 Ct.Cl. at 465–66, 650 F.2d at 268–69.

### CONCLUSION

For the foregoing reasons, the defendant's motion to dismiss the plaintiff's complaint is **GRANTED.** The clerk's office shall enter **JUDGMENT** for the defendant consistent with this opinion. Each party shall bear its own costs.

**IT IS SO ORDERED.**