Mary K. **EDELMANN** and Christopher Edelmann, Plaintiffs,

v.

The UNITED STATES, et al., Defendants.

No. 03–2692 C.

United States Court of Federal Claims.

April 24, 2007.

Mary K. Edelmann, Fort Worth, TX, pro se.

Christopher Edelmann, Little Rock, AR, pro se.

Carrie A. Dunsmore, Trial Attorney, Todd M. Hughes, Assistant Director, Jeanne E. Davidson, Director, Peter D. Keisler, Assistant Attorney General, Department of Justice, Washington, D.C., for defendant.

### OPINION AND ORDER

GEORGE W. MILLER, Judge.

This matter is before the Court on defendant's motion to dismiss plaintiffs' second amended complaint for lack of subject matter jurisdiction. Defendant filed its motion ("Def.'s Mot.," docket entry 29) on February 15, 2007. Plaintiffs filed their response ("Pls.' Resp.," docket entry 35) on March 20,

2007. Defendant submitted its reply ("Def.'s Reply," docket entry 36) on April 5, 2007, and refiled it, at the Court's request, on April 13, 2007.

Because plaintiffs are appearing *pro se*, their pleadings are held to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972). Accordingly, the Court shall construe "plaintiff[s'] pleadings liberally." *McSheffrey v. United States*, 58 Fed.Cl. 21, 25 (2003). "This latitude, however, does not relieve a *pro se* plaintiff from meeting jurisdictional requirements." *Bernard v. United States*, 59 Fed.Cl. 497, 499 (2004). Even under the less-stringent standard applicable to *pro se* plaintiffs, for the reasons set forth below, the Court concludes that it lacks jurisdiction over the subject matter of plaintiffs' claims. However, the Court denies the Government's motion to dismiss and directs the transfer of plaintiffs' action to the United States District Court for the Eastern District of Arkansas pursuant to 28 U.S.C. § 1631 (2000).

## BACKGROUND [1]

Plaintiffs originally brought this action against the United States, various named and unnamed Assistant United States Attorneys ("AUSAs"), and several financial institutions in November 2003. In their original complaint ("Compl.," docket entry 1), plaintiffs sought $1.5 million in damages, alleging a number of misdeeds surrounding grand jury subpoenas and the financial institutions' subsequent disclosure of certain of plaintiffs' financial records in compliance with those subpoenas. Compl. ¶¶ 1–14.

On April 9, 2004, defendant filed a motion to stay proceedings (docket entry 13), pending the outcome of criminal proceedings involving Ms. Edelmann, from which plaintiffs' claims in this action arose. The Court granted defendant's motion on May 5, 2004, and ordered that a status report be filed within ten days after the conclusion of criminal proceedings against Ms. Edelmann, including any appeal.[2] On August 25, 2006, defendant filed a status report (docket entry 19) informing the Court that Ms. Edelmann's conviction for mail fraud, wire fraud, and money laundering, *United States v. Edelmann*, 458 F.3d 791, 798 (8th Cir.2006), had been affirmed by the United States Court of Appeals for the Eighth Circuit. On October 6, 2006, following the issuance of the mandate of the Court of Appeals, this Court issued an order lifting the stay and setting a schedule for further proceedings in this case (docket entry 22).

On October 24, 2006, plaintiffs filed a motion for leave to amend their complaint, as well as their proposed second amended complaint ("Sec. Am. Compl.," docket entry 23). Their motion for leave to amend explained that, since the filing of the original complaint and their first amended complaint, defendant's alleged continuing misconduct with respect to Ms. Edelmann's criminal conviction had given rise to other claims in addition to those originally stated. Plaintiffs' second amended complaint included 124 allegations, up from fourteen in the original complaint.

Plaintiffs allege that the Government, through the various AUSAs, committed fraud, misrepresentation, slander, perjury, harassment, intimidation, coercion, theft, defamation, and that the Government deprived Ms. Edelmann of her right to a fair trial. *See, e.g.*, Sec. Am. Compl. ¶¶ 26–30, 42, 44, 48, 50–52, 56–57, 62, 65, 66, 72–73, 84, 87, 89–90, 103–04, 112–13, 116, 120–21, 123–24. Plaintiffs assert that the Government violated a plea agreement they allege Ms. Edelmann entered into, under which she would cooperate with the Government and, in return, would only be charged with one count of fraud and would not be incarcerated. *Id.* ¶¶ 11, 32–33. Although the alleged plea agreement was not memorialized in a signed writing, plaintiffs allege that the Government entered into an implied-in-fact contract with Ms. Edelmann. Pls.' Resp. 3. Plaintiffs further assert that the Government unlawfully

---

1. The facts set forth herein do not constitute findings of fact by the Court. All of the stated facts are either undisputed or alleged and assumed to be true for purposes of the pending motion.

2. For information relating to the facts underlying the criminal case against Ms. Edelmann, *see United States v. Edelmann*, 458 F.3d 791, 798–803 (8th Cir.2006).

gained access to, and certain financial institutions unlawfully disclosed to the Government, plaintiffs' financial records in violation of the Right to Financial Privacy Act of 1978, 12 U.S.C. § 3401 *et seq.* (2000) ("RFPA"). Sec. Am. Compl. ¶¶ 12–19. Plaintiffs allege that the Government violated Ms. Edelmann's constitutional rights by incarcerating her in a mental institution and forcing her to undergo a mental evaluation, *id.* ¶ 93, and deprived plaintiffs of their Fifth and Fourteenth Amendment rights to due process and equal protection of the law. *Id.* ¶¶ 12, 19. Plaintiffs also allege that the forfeiture of certain of plaintiffs' property constituted a taking without just compensation under the Fifth Amendment. Pls.' Resp. 12–16. Finally, plaintiffs allege that the Government violated Ms. Edelmann's Eighth Amendment right to be free from cruel and unusual punishment and her Sixth Amendment right to counsel. Sec. Am. Compl. ¶¶ 108, 118–19.

### *DISCUSSION*

### I. Standard of Review

Subject matter jurisdiction may be challenged at any time by the parties, the Court *sua sponte,* or on appeal. *Booth v. United States,* 990 F.2d 617, 620 (Fed.Cir.1993). In considering defendant's motion to dismiss for lack of subject matter jurisdiction, the Court must construe the facts in the complaint in the light most favorable to plaintiffs, *see Nw. Airlines v. Trans. Workers Union,* 451 U.S. 77, 81 n. 3, 101 S.Ct. 1571, 67 L.Ed.2d 750 (1981) (citing *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974)), and accept any undisputed allegations of fact as true. *See Reynolds v. Army and Air Force Exch. Serv.,* 846 F.2d 746, 747 (Fed. Cir.1988).

When jurisdictional facts are challenged, however, the Court need not accept plaintiffs' framing of the complaint. *See Lewis v. United States,* 32 Fed.Cl. 301, 304 (1994), *aff'd,* 70 F.3d 597 (Fed.Cir.1995). Plaintiffs are responsible for setting forth a jurisdictional basis for their claims. Rule 8(a)(1) of the Rules of the United State Court of Federal Claims (the complaint must contain "a short and plain statement of the grounds upon which the court's jurisdiction depends.").

"Determination of jurisdiction starts with the complaint, which must be well-pleaded in that it must state the necessary elements of the plaintiff[s'] claim, independent of any defense that may be interposed." *Holley v. United States,* 124 F.3d 1462, 1465 (Fed.Cir. 1997). " 'The court should [then] look to plaintiff[s'] factual allegations to ascertain the true nature of the claims' as well as 'to matters outside the pleadings' in deciding whether or not it has jurisdiction." *Cottrell v. United States,* 42 Fed.Cl. 144, 148 (1998) (quoting *Lewis v. United States,* 32 Fed.Cl. 301, 304 (1994)). Plaintiffs, however, bear the ultimate burden of establishing subject matter jurisdiction over their claims. *See Reynolds,* 846 F.2d at 747; *Burgess v. United States,* 20 Cl.Ct. 701, 703 (1990).

### II. Motion to Dismiss for Lack of Subject Matter Jurisdiction

Like all federal courts, the Court of Federal Claims is a court of limited jurisdiction. *Phaidin v. United States,* 28 Fed.Cl. 231, 233 (1993); *Dynalectron Corp. v. United States,* 4 Cl.Ct. 424, 428 (1984). Absent congressional consent to entertain a claim against the United States, the Court lacks authority to grant relief. *See United States v. Testan,* 424 U.S. 392, 399, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976); *United States v. Sherwood,* 312 U.S. 584, 586, 61 S.Ct. 767, 85 L.Ed. 1058 (1941). Congressional consent to suit in the Court of Federal Claims, which thereby waives sovereign immunity, must be explicit and strictly construed. *United States v. Mitchell,* 445 U.S. 535, 538, 100 S.Ct. 1349, 63 L.Ed.2d 607 (1980).

The Tucker Act, 28 U.S.C. § 1491(a)(1) (2000), constitutes a waiver of sovereign immunity. *United States v. Mitchell,* 463 U.S. 206, 212, 103 S.Ct. 2961, 77 L.Ed.2d 580 (1983). The Tucker Act grants the Court jurisdiction over claims for money damages against the United States founded either upon the Constitution, a federal statute or regulation, or upon an express or implied contract with the United States. This Court's jurisdiction does not, however, include tort claims against the United States. 28 U.S.C. § 1491(a)(1); *see New York Life Ins. Co. v. United States,* 118 F.3d 1553, 1555

(Fed.Cir.1997). Clearly, not all suits brought against the United States fall within this Court's jurisdiction; the subject matter of the claims must fall within the parameters of the Tucker Act as described above. *See Soriano v. United States,* 352 U.S. 270, 273, 77 S.Ct. 269, 1 L.Ed.2d 306 (1957); *Ashgar v. United States,* 23 Cl.Ct. 226, 230 (1991).

Furthermore, the Tucker Act does not itself create a substantive right of action enforceable against the United States. *Testan,* 424 U.S. at 398, 96 S.Ct. 948. Plaintiffs must therefore identify another source of law that creates the substantive right and demonstrate that such source of law mandates compensation. *Mitchell,* 463 U.S. at 216–17, 103 S.Ct. 2961. The other source of law must be "reasonably amenable to the reading that it mandates a right of recovery in damages." *Doe v. United States,* 463 F.3d 1314, 1324 (Fed.Cir.2006) (quoting *United States v. White Mountain Apache Tribe,* 537 U.S. 465, 472–73, 123 S.Ct. 1126, 155 L.Ed.2d 40 (2003)). If the Court determines that the source of law identified by plaintiffs meets the money-mandating test, it will "declare that it has jurisdiction over the cause, and shall then proceed with the case in the normal course." *Fisher v. United States,* 402 F.3d 1167, 1173 (Fed.Cir.2005) (en banc). On the other hand, "[i]f the court's conclusion is that the source as alleged and pleaded is not money-mandating, the court shall so declare, and shall dismiss the cause for lack of jurisdiction, a Rule 12(b)(1) dismissal—the absence of a money-mandating source being fatal to the court's jurisdiction." *Id.*

A. *The Court Lacks Jurisdiction Over Plaintiffs' Claims Relating to Named and Unnamed Individual and Financial Institution Defendants*

■ Before analyzing the subject matter of plaintiffs' claims, however, this Court must address a fundamental principle of Tucker Act jurisdiction. The Court of Federal Claims does not have jurisdiction over suits against private parties; it only has jurisdiction over suits against the United States.

*See Sherwood,* 312 U.S. at 588, 61 S.Ct. 767; *Brown v. United States,* 105 F.3d 621, 624 (Fed.Cir.1997); *Berdick v. United States,* 222 Ct.Cl. 94, 100, 612 F.2d 533, 536 (1979); *Cottrell,* 42 Fed.Cl. at 148–49.

■ In this action, plaintiffs name thirteen private parties (as well as "Unknown Federal Employees/Agents")[3] as defendants. To the extent plaintiffs are alleging claims against the private parties and not the United States, the Court lacks subject matter jurisdiction over such claims. To the extent, however, plaintiffs assert claims against the United States based upon certain alleged conduct of its agents (*i.e.,* various AUSAs), the claims are dealt with in the Court's analysis in Sections II.B through E, *infra.*

B. *The Court Lacks Jurisdiction Over Plaintiffs' Tort Claims*

■ "It is well settled that the United States Court of Federal Claims lacks ... jurisdiction to entertain tort claims. The Tucker Act expressly provides that the 'United States Court of Federal Claims shall have jurisdiction ... in cases *not* sounding in tort.'" *Shearin v. United States,* 992 F.2d 1195, 1197 (Fed.Cir.1993) (quoting 28 U.S.C. § 1491(a)(1) (1988)) (emphasis in original). Rather, the Federal Tort Claims Act, 28 U.S.C. § 2671 *et seq.* (2000), grants jurisdiction to hear tort claims exclusively to United States district courts. 28 U.S.C. § 1346(b)(1) (2000); *see also Wood v. United States,* 961 F.2d 195, 197 (Fed.Cir.1992).

This Court "does not have jurisdiction over claims that defendant engaged in negligent, fraudulent, or other wrongful conduct when discharging its official duties." *Cottrell,* 42 Fed.Cl. at 149 (citing *McCauley v. United States,* 38 Fed.Cl. 250, 265 (1997)); *see also* 28 U.S.C. § 1346(b)(1) ("[T]he district courts ... shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages ... for injury or loss of property ... caused by the negligent or wrongful act or omission of any employee of

---

3. The thirteen private parties plaintiffs name as defendants are AUSAs Dan Stripling, Anne Gardner, George Vena, Angela Jegley, and Sharon Dawkins, American Express Credit Card Company, American Express Centurion Bank, Bank of America, Netbank, the Capital Bank, Superior Bank, Ocwen Federal Bank, and First Tennessee Bank.

the Government while acting within the scope of his office or employment. . . .").

Plaintiffs' claims of fraud, misrepresentation, slander, perjury, harassment, intimidation, coercion, theft, and defamation, and their claims that the Government deprived Ms. Edelmann of her right to a fair trial, are tort claims. Plaintiffs went so far as to assert that this Court possessed jurisdiction over these claims under the Federal Tort Claims Act. Sec. Am. Compl. ¶ 3.

Plaintiffs attempt to salvage certain of their tort claims by asserting that they arise from the breach of an implied contract with the Government and, as such, this Court has jurisdiction over those claims. Pls.' Resp. 6. While this Court may hear a tort claim that arises from a breach of contract, *see Awad v. United States*, 301 F.3d 1367, 1372 (Fed.Cir. 2002), "[e]ven where the claim is framed under non-tort law, the court lacks jurisdiction if the essence of the claim lies in tort." *Cottrell*, 42 Fed.Cl. at 149 (citing *Brown*, 105 F.3d at 623). Although this Court has no jurisdiction over the alleged implied-in-fact contract and, in any event, plaintiffs are precluded from arguing that Ms. Edelmann and the Government had entered into an implied plea agreement, *see* Section II.C, *infra*, even if there were such an implied contract, plaintiffs have done nothing more than attempt to reframe certain of their tort claims as arising under that contract. The Court does not possesses subject matter jurisdiction over such tort claims.

C.  *Pursuant to Kania, the Court Lacks Jurisdiction Over the Alleged Implied–in–Fact Plea Agreement Between Ms. Edelmann and the Government*

■ Plaintiffs allege that AUSA Stripling offered Ms. Edelmann a plea bargain in August 2001 under which, if she cooperated with the Government, she would only be charged with one count of fraud, and would not be incarcerated. Sec. Am. Compl. ¶ 11. She believed that a plea agreement was in place, relying on her attorney's advice that she should cooperate with the Government without the benefit of a written plea agreement. *Id.* ¶¶ 31–32. Plaintiffs assert that,

after the Government received the full benefit of Ms. Edelmann's cooperation under the alleged plea agreement, it was revoked, and thereby violated, by the Government. *Id.* ¶¶ 23–24, 27.

Although the Tucker Act grants the Court of Federal Claims jurisdiction to render judgment on claims founded on express and implied contracts with the Government, 28 U.S.C. § 1491(a)(1), that jurisdiction is limited to certain types of contracts. *See Kania v. United States*, 227 Ct.Cl. 458, 464, 650 F.2d 264, 268 (1981) ("The contract liability which is enforceable under the Tucker Act consent to suit does not extend to every agreement, understanding, or compact [with the Government] which can semantically be stated in terms of offer and acceptance or meeting of minds.").

A plea agreement is not of the type of contract over which the Tucker Act grants this Court jurisdiction. Rather, "[p]lea agreements are creations of the criminal justice system and must remain within that system for enforcement." *Drakes v. United States*, 28 Fed.Cl. 190, 194 (1993). The breach of a plea agreement "never generates civil remedies such as monetary damages or specific performance." *Doe v. United States*, 37 Fed.Cl. 74, 78 (1996) (quoting *Johnson v. Sawyer*, 980 F.2d 1490, 1501 (5th Cir.1992)). Remedies relating to the Government's breach of a plea bargain "are in the jurisdiction of the court which presided over the criminal prosecution and plea agreement." *Pappas v. United States*, 66 Fed.Cl. 1, 8 (2005).

The only situation in which this Court could exercise jurisdiction over a claim for breach of a plea agreement would be where the Court was able to find "(1) specific authority of the AUSA to make an agreement obligating the United States to pay money and (2) specific language in the agreement 'spelling out how in such a case the liability of the United States [to pay money] is to be determined[.]'" *Drakes*, 28 Fed.Cl. at 193 (quoting *Kania*, 227 Ct.Cl. at 465, 650 F.2d at 268); *see also Trudeau v. United States*, 68 Fed.Cl. 121, 127 (2005) ("The jurisdiction of the Court of Federal Claims does not extend to contracts entered into by the Gov-

ernment in its sovereign capacity that do not unmistakably subject the United States to damages in the event of breach."), *aff'd* 186 Fed.Appx. 998 (Fed.Cir.2006). Because plaintiffs allege an implied-in-fact, rather than a written, plea agreement, no such specific language exists. Accordingly, the Court does not possesses subject matter jurisdiction over plaintiffs' claim for breach of an implied plea agreement.

Even if the Court had jurisdiction, however, plaintiffs' contention that the Government violated a plea agreement with Ms. Edelmann would be precluded by collateral estoppel. The doctrine of collateral estoppel holds that a "right, question, or fact distinctly put in issue, and directly determined by a court of competent jurisdiction ... cannot be disputed in a subsequent suit between the same parties or their privies...." *S. Pac. R. Co. v. United States,* 168 U.S. 1, 48, 18 S.Ct. 18, 42 L.Ed. 355 (1897). Once an issue is decided by a court of competent jurisdiction, that determination is conclusive in subsequent suits involving a party to the prior litigation, even if the subsequent suits are based on a different cause of action. *Parklane Hosiery Co. v. Shore,* 439 U.S. 322, 326 n. 5, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979); *Mother's Rest. Inc. v. Mama's Pizza, Inc.,* 723 F.2d 1566, 1569 (Fed.Cir.1983). Collateral estoppel focuses on whether an issue, rather than a claim, has previously been litigated and decided. *Sharp Kabushiki Kaisha v. Thinksharp, Inc.,* 448 F.3d 1368, 1370 (Fed.Cir. 2006).

Applying the doctrine of collateral estoppel to preclude a party from relitigating an issue is appropriate when: "(i) the issue previously adjudicated is identical with that now presented, (ii) that issue was 'actually litigated' in the prior case, (iii) the previous determination of that issue was necessary to the end-decision then made, and (iv) the party precluded was fully represented in the prior action." *Kroeger v. United States Postal Serv.,* 865 F.2d 235, 239 (Fed.Cir.1988) (quoting *Thomas v. Gen. Services Admin.,* 794 F.2d 661, 664 (Fed.Cir.1986)).

In her criminal trial, Ms. Edelmann argued that the court should suppress incriminating statements she made to government agents during preindictment meetings under Rule 410 of the Federal Rules of Evidence because they were made in the course of a plea agreement. *Edelmann,* 458 F.3d at 804. The United States District Court for the Eastern District of Arkansas and the Eighth Circuit held that Ms. Edelmann and the Government had not entered into any plea agreement. *Id.* at 806. The issue now raised is identical to that decided by the those courts. It was fully litigated in those courts, and was necessary to their ultimate conclusion that Ms. Edelmann's testimony should not be suppressed.

In order for a party to be "fully represented" in the prior action, it is not necessary that the party have been represented by counsel. Rather, it is necessary that "the interests of the party to be precluded were fully represented." *Simmons v. Small Bus. Admin.,* 475 F.3d 1372, 1374 (Fed.Cir.2007); *see also Mother's Rest.,* 723 F.2d at 1572 ("Federal courts have repeatedly held a non-party may be bound by a judgment if one of the parties to the earlier suit is so closely aligned with the non-party's interests as to be its virtual representative."). Because Ms. Edelmann was a party both to the criminal case and the current action, the interests of both plaintiffs were fully represented. Each of the four elements of collateral estoppel is met in this case. Thus, even if this Court had jurisdiction over plaintiffs' implied plea agreement claim, plaintiffs' contention that the Government violated a plea agreement with Ms. Edelmann would fail because, under the doctrine of collateral estoppel, plaintiffs would be precluded from relitigating the issue whether there was a plea agreement.

### D. The Court Lacks Jurisdiction Over Plaintiffs' RFPA Claims

The RFPA specifically assigns jurisdiction over RFPA claims to the district courts. "An action to enforce any provision of [the RFPA] may be brought in any appropriate United States district court without regard to the amount in controversy...." 12 U.S.C. § 3416 (2000). Because the Court of Federal claims is not a United States district court, *see, e.g., Ledford v. United States,* 297 F.3d 1378, 1382 (Fed.Cir.2002); *Black v.*

*United States,* 56 Fed.Cl. 19, 22 (2003); *Hernandez v. United States,* 38 Fed.Cl. 532, 538 (1997), this Court does not possess jurisdiction over plaintiffs' RFPA claims.

### E. *The Court Lacks Jurisdiction Over Plaintiffs' Constitutional* Claims

■ Plaintiffs allege that the Government deprived them of their right to due process and equal protection of the law under the Fifth and Fourteenth Amendments, violated the Sixth and Eighth Amendments, violated Ms. Edelmann's constitutional rights by requiring her to undergo a mental evaluation and hospitalization in a mental institution, and took plaintiffs' property without just compensation. Sec. Am. Compl. ¶¶ 12, 14, 19, 93, 108, 118–19; Pls.' Resp. 12–16.

■ Although the Court's jurisdiction extends to monetary claims founded on the United States Constitution, 28 U.S.C. § 1491(a)(1), "constitutional claims a plaintiff asserts must be 'money-mandating' to come within the jurisdiction of the Court." *Baker v. United States,* 74 Fed.Cl. 421, 421 (2006) (citing *United States v. Testan,* 424 U.S. 392, 398, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976)). This court has held that:

> [a]llegations concerning violation of the Due Process clauses of the Fifth and Fourteenth Amendments and the Equal Protection clause of the Fourteenth Amendment cannot be interpreted to require the payment of money for their alleged violation, and, therefore, they do not provide an independent basis for jurisdiction in this Court.

*Mohlen v. United States,* 74 Fed.Cl. 656, 666 (2006) (citing *LeBlanc v. United States,* 50 F.3d 1025, 1028 (Fed.Cir.1995)). In addition, allegations with respect to the violation of plaintiffs' rights under the Sixth and Eighth Amendments are outside this Court's jurisdiction because those Amendments do not mandate monetary compensation. *Ogden v. United States,* 61 Fed.Cl. 44, 47 (2004); *see also Cosma–Nelms v. United States,* 72 Fed.Cl. 170, 172 (2006) ("This Court's jurisdiction only extends to those provisions of the Constitution which are money mandating and does not include claims based on the First Amendment, the Due Process Clause, the

Eighth Amendment, or the Equal Protection Clause."). With respect to plaintiffs' assertion that Ms. Edelmann's hospitalization in a mental institution and mental evaluation violated her constitutional rights, plaintiffs have failed to identify any money-mandating provision that was allegedly violated.

■ The Takings Clause of the Fifth Amendment qualifies as a money-mandating provision, and this Court generally has jurisdiction over a taking claim. *Hammitt v. United States,* 69 Fed.Cl. 165, 168 (2005) (citing *Murray v. United States,* 817 F.2d 1580, 1583 (Fed.Cir.1987)). However, this Court lacks jurisdiction over a taking claim "that requires the court to 'scrutinize the actions of' another tribunal." *Vereda, Ltda. v. United States,* 271 F.3d 1367, 1375 (Fed. Cir.2001) (quoting *Allustiarte v. United States,* 256 F.3d 1349, 1352 (Fed.Cir.2001)); *see also Joshua v. United States,* 17 F.3d 378, 380 (Fed.Cir.1994) ("[T]he Court of Federal Claims does not have jurisdiction to review the decisions of district courts or the clerks of district courts relating to proceedings before those courts."). The United States District Court for the Eastern District of Arkansas entered a Final Judgment of Forfeiture on October 22, 2004, and the Eighth Circuit affirmed the district court's judgment of forfeiture. *Edelmann,* 458 F.3d at 814. This Court lacks jurisdiction to review those courts' forfeiture rulings, as it does to adjudicate plaintiffs' other constitutional claims.

### F. *Plaintiffs Are Not Entitled to Recover Expenses Incurred in Ms. Edelmann's Criminal Trial*

Plaintiffs assert that they are entitled to recover all expenses incurred during the preparation of Ms. Edelmann's criminal case, including $40,000 in fees she paid the attorney who represented her in that case. Sec. Am. Compl. ¶ 51. However, "[i]t is well settled that in the absence of specific statutory authority, expenses incurred in litigation, whether legal, accounting, secretarial, or other, are not awardable as such." *Kania,* 227 Ct.Cl. at 466, 650 F.2d at 269 (citing *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y,* 421 U.S. 240, 257, 95 S.Ct. 1612, 44 L.Ed.2d 141

(1975)). Moreover, a significant exception to this rule, the Equal Access to Justice Act, 28 U.S.C. § 2412(d) (2000), is not applicable here because the fees were incurred in another action, not in the present case. *See Jarvis v. United States*, 45 Fed.Cl. 19, 20 (1999). Plaintiffs' request for expenses arising from Ms. Edelmann's prior litigation must, therefore, fail.

### G. *Plaintiffs' Claims Will Be Transferred to the District Court*

In view of this Court's conclusion that it lacks jurisdiction over plaintiffs' claims, the Court must consider whether to transfer plaintiffs' action to another court. *See Tex. Peanut Farmers v. United States*, 409 F.3d 1370, 1374–75 (Fed.Cir.2005). Although plaintiffs have not requested that their action be transferred, this Court may "order [ ] transfer without being asked to do so by either party." *Tex. Peanut Farmers*, 409 F.3d at 1375. Because plaintiffs are proceeding *pro se*, the Court deems it appropriate to consider the possibility of transfer, even absent any motion from plaintiffs. *See Skillo v. United States*, 68 Fed.Cl. 734, 743 n. 15 (2005).

> The federal transfer statute provides that [w]henever a civil action is filed in a court ... and that court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action ... to any other such court in which the action ... could have been brought at the time it was filed ... and the action ... shall proceed as if it had been filed in ... the court to which it is transferred on the date upon which it was actually filed in ... the court from which it is transferred.

28 U.S.C. § 1631. The transfer statute's use of the phrase "shall ... transfer" "persuasively indicates that transfer, rather than dismissal, is the option of choice." *Matthews v. United States*, 72 Fed.Cl. 274, 280 n. 9 (2006) (quoting *Britell v. United States*, 318 F.3d 70, 73 (1st Cir.2003)).

▮▮▮▮ In determining whether to transfer the action, the Court must address two questions: (1) whether the action could have originally been brought in another court, and (2) whether it is "in the interest of justice" to transfer the case. The criminal trial, and the alleged conduct giving rise to plaintiffs' claims, took place in the Eastern District of Arkansas. The district court for that district would have jurisdiction over plaintiffs' claims.

In the current case, the interest of justice mandates that at a minimum plaintiffs' RFPA claims should be transferred. An action to enforce the RFPA must be brought "within three years from the date on which the violation occurs or the date of discovery of such violation, whichever is later." 12 U.S.C. § 3416. Plaintiffs first alleged RFPA violations in their original complaint. *See, e.g.*, Compl. ¶¶ 2–8. Defendant moved to stay proceedings on April 9, 2004. The Court granted defendant's motion on May 5, 2004, and the stay was not lifted until more than two years later, on October 6, 2006. If plaintiffs were required to file a new complaint, their RFPA claims would be time-barred. "If dismissal of a claim would result in the claim being time-barred when it is refiled in a court of proper jurisdiction, then justice requires transfer." *AGP, L.P. v. United States*, 41 Fed.Cl. 607, 609 (1998) (quoting *Cavin v. United States*, 19 Cl.Ct. 190, 197 (1989)). As to plaintiffs' other claims, it is uncertain whether plaintiffs would suffer prejudice if the claims were dismissed and plaintiffs were required to refile in the district court. *See Earnest v. United States*, 33 Fed.Cl. 341, 344 (1995) ("[A] transfer is not necessary to advance the interests of justice when the plaintiff may refile the complaint in the district court without penalty ....") (quoting *Bedoni v. Navajo–Hopi Indian Relocation Comm'n*, 854 F.2d 321, 326 (9th Cir.1988)). In view of the uncertainty with respect to prejudice, and out of what may be an excess of caution, this Court will transfer all of plaintiffs' claims to the United States District Court for the Eastern District of Arkansas.

### CONCLUSION

Although this Court lacks subject matter jurisdiction over plaintiffs' claims, plaintiffs could have brought this action at the time it was filed in the United States District Court for the Eastern District of Arkansas. Because it serves the interest of justice to

transfer, rather than dismiss, plaintiffs' action, defendant's motion to dismiss is DENIED. The Clerk shall transfer this case to the District Court for the Eastern District of Arkansas forthwith, pursuant to 28 U.S.C. § 1631.

In light of this Court's conclusion on the jurisdictional issue and the Court's determination to transfer plaintiffs' action, the Court DENIES as moot defendant's request that Mr. Edelmann be dismissed from the case because plaintiffs made no allegation that he had entered into an agreement with the Government or that he was a third-party beneficiary of a contract with the Government. Def.'s Reply 3 n. 2.

IT IS SO ORDERED.